UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE KARAS**

—————————————————————————x  **19 CV   7122**

James H. Brady,

                 *Plaintiff,*

    *V.*

Barry R. Ostrager,
John Doe 1-10, and,
Jane Doe 1-10.

             *Defendant.*

—————————————————————————X

INDEX No. _____

**COMPLAINT**

**JURY DEMAND /
DAMAGES**

Plaintiff James H. Brady complains as follows:

## NATURE OF THIS ACTION

1.    This is an action to recover money damages arising out of the violation of Plaintiff's rights under the Constitution of the United States.

2.    This action alleges violations of Plaintiff's civil rights to due process and equal treatment pursuant to 42 U.S.C. §1983 and §1985; violation of Plaintiff's First Amendment right; and violations of Civil RICO 18 U.S.C.§1964(c); Conspiracy Against Rights; Failure to Intervene; Denial of Plaintiff's Right to a Fair Trial; and Intentional Infliction of Emotional Distress.

3.    The allegations in this action are undisputed. Defendant Barry R. Ostrager is familiar with all of the evidence in this Complaint and as detailed herein has never disputed a word of it.

4.    These violations were so outrageous; Plaintiff seeks Punitive Damages pursuant to 42 U.S.C. §1983.

## JURISDICTION AND VENUE

5.    This action is brought pursuant to 42 U.S.C. §1983, §1985 and §1343(a)(3), and the Fifth and Fourteenth Amendments to the Constitution of the United States.  This Court has jurisdiction pursuant to 28 U.S.C. §1331, §1343, and §1367(a).

6.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## PARTIES

7.    Plaintiff James H. Brady is the former owner of the commercial co-operative apartment located at 450 West 31st Street, 12th Floor and Roof Unit, New York, NY 10001, and resides at 510 Sicomac Avenue, Wyckoff, NJ 07481.

8.    Plaintiff has been an outspoken advocate since 2009 in exposing corruption in the New York State Courts and exposing the Court's *quid pro quo* relationship with Governor Cuomo and other politically connected people.

9.    Since June of 2015, Defendant Hon. Justice Barry R. Ostrager is a New York Supreme Court Justice of the Commercial Division.

10.    Justice Ostrager was appointed to the New York Court of Claims by Governor Andrew Cuomo in June 2015, but for some unexplained reason, he took over Plaintiff's case that was before Justice Joan Madden since 2009.

11.     Immediately upon retaliating against James H. Brady during the June 2015 Trial, he was rewarded to a position as a brand new judge to the prestigious and very powerful Commercial Division though he had no other trial experience.

12.     Prior to his appointment, Justice Ostrager spent his entire career at Simpson Thacher & Bartlett, LLP, becoming a partner in 1980 and serving as Chair of the firm's Litigation Department from 1999 until his retirement in 2015.

13.     Defendant Justice Barry R. Ostrager was the presiding judge in the New York State Supreme Court, Manhattan Division in two separate matters in the case *IGS Realty v. James H. Brady*, Index No. 603561/20009.

## STATEMENT OF FACTS

14.     On September 5, 2018 Plaintiff was forced to lose his and his wife's livelihood and his family business destroyed in order to pay $1,705,535.71 of unlawful court-created debt (Exhibit 1) as a result of Defendant Barry R. Ostrager's and others non-judicial acts that were taken in an absence of all jurisdiction.

15.     As a result of Barry R. Ostrager's refusal to adjudicate with a Yes or No answer, Plaintiff's defenses in a Personal Guarantee case, Plaintiff was force to pay $1,705,535.71 on September 5, 2018 to a Landlord whose attorney admitted himself in court was not entitled to a penny under the law.

16.    Defendant Barry Ostrager refused to adjudicate with a Yes or No answer to Plaintiff's defenses, because he knew the answer was a Yes; the Personal Guarantees were voided by the landlord's illegal actions and inactions.

17.    A review of Barry Ostrager's one sentence long hand-written decision on a cover sheet from February 17, 2017 (Exhibit 2) proved conclusively he completely ignored to adjudicate Plaintiff's Personal Guarantees defense.

18.    A review of Barry Ostrager's April 7, 2017 one sentence long hand-written decision on a cover-sheet (Exhibit 3) further proves that Judge Barry Ostrager refused to adjudicate the Personal Guarantees issue, although that was the issue before the Court.

19.    The law is clear that the mandated duty of a judge is to adjudicate the issue before them.

20.    "The principal hallmark of the judicial function is a decision in relation to a particular case." *Mireles v. Waco,* 502 US 9 (Supreme Court 1991).

21.    Judge Barry Ostrager's February 17, 2017 (Exhibit 2) hand-written decision and his April 7, 2017 (Exhibit 3) hand-written decision proves he refused his judicial functions when he refused to adjudicate the express issue before the court.

22.    The refusal to adjudicate the issue before the Court was a constitutional violation of due process.

4

23.    The refusal to adjudicate the express issue before the Court was part of a conspiracy against Plaintiff's rights, which was a violation of 42 U.S.C. Sec.1983, 1985, and Civil RICO 18 U.S.C.§1964(c).

24.    The Landlord's Amended Complaint of August 8, 2014 (Exhibit 7) proves there were never any claims made by the Landlord of wrongdoing on the part of Plaintiff or his companies.

25.    Defendant Barry Ostrager's participation in the retaliatory conspiracy, and the violations of Plaintiff's Constitutional rights, were not judicial acts but acts that were done outside his judicial capacity, for which Defendant Barry Ostrager is not immune from damages as an individual.

26.    "A judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Forrester v. White*, 484 U.S. 227 -229; *Stump v. Sparkman*, 435 U.S. 360 (1978).  "A judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Stump* at 356.

27.    A review of the January 27, 2017 letter to Judge Ostrager (Exhibit 4) and the February 17, 2017 Oral Argument transcript (Exhibit 5) provided binding case law of why the Personal Guarantees were voided as a matter of law and public policy.

28.    It was absent on all jurisdictions and was a constitutional violation for Judge Barry Ostrager to refuse to make a decision in relation to this particular Personal Guarantees case.

29.    The refusal to adjudicate the issue before the Court was the opposite of a judicial act and thus judicial immunity does not apply.

30.    The unlawful and unconstitutional acts of Barry Ostrager were not taken in the judges' judicial capacity.

31.    Judges are immune for the wrong decision they may make, but they are not immune from liability from a judicial function that the Court was required to make as a judicial function but yet refuses to make.

32.    The principle function of judicial acts is to adjudicate the issues before the Court, not to refuse to adjudicate the issues before the Court.

33.    Defendant Barry Ostrager's refusal to adjudicate the Personal Guarantees was a non-judicial act and was done outside Defendant Barry Ostrager's jurisdiction.

34.    "Making evidentiary ruling is a paradigmatic function performed by judges." *Ashmore v. State of New York*, 12-cv 3032.

35.    Plaintiff had his life destroyed and had to sell his commercial co-op and lose his business because Judge Ostrager and Appellate Division Judges refused to make an evidentiary ruling, although it is a paradigmatic function performed by judges.

36.    The January 27, 2017 letter (Exhibit 4) written to Judge Ostrager includes the following paragraphs detailing what issues were to be heard at the Personal Guarantee Oral Arguments:

> This Court has scheduled Oral Arguments for February 17, 2017 to review Plaintiff's legal fees totaling nearly $1.3 million. In order for the Court to award

6

those fees, Your Honor would have to make two independent determinations. First, the Landlord did not change and increase the risk under the leases from the good and satisfactory "as is" condition, compliant with fire safety laws, after Defendant signed the leases and personal guarantees. Secondly, the Court would have to determine that the Landlord did not act unlawfully in converting the building from the "as is" factory building condition guaranteed in the leases, to a DOB non-conforming office space building. New York black letter law is clear that it is contrary to public policy that a landlord benefit from his own unlawful acts. (Page 1)

Whether the Landlord changed the risk under the leases was the first question Plaintiff presented to the Court, and it remained a question never addressed by the Court and never given to the jury. This error formed the basis for the incorrect jury instruction that led to a directed verdict.  Furthermore, as shown in the accompanying Reply Brief, pursuant to the leases, Your Honor should have determined whether the Landlord changed the risk.  Instead, the Record shows that the issue of the Personal Guarantees was never addressed directly by Your Honor at trial.  Accordingly, the issue has not be*en adjudged. (Page 2)*

37.    The February 17, 2017 Oral Argument Transcript (Exhibit 5) shows Barry Ostrager again being told that as a matter of law and public policy the Personal Guarantees were voided by the landlord's illegal conduct after the leases and Personal Guarantees were signed.

38.    On page 7 of the February 17, 2017 Oral Argument Transcript, Barry Ostrager mentions his June 23, 2015 threat that Mr. Brady accept the Landlord's offer to pay $50,000 to settle the case:

"You know that I pleaded with you to resolve this jury case before the case was submitted to the jury."

39.    That "resolution" of the case was to accept a $50,000 offer from the Landlord who owed Mr. Brady millions of dollars in damages.  Barry Ostrager wanted

Plaintiff to suffer and be forced to pay the Landlord over $1,705,535.71 million as punishment for declining his threat.

40.    Defendant Barry Ostrager's refusal to adjudicate Plaintiff's Personal Guarantees defense resulted not only in Plaintiff having his life and business destroyed to pay the admitted scofflaw Landlord $1,705,535.71 million, but also foreclosed Plaintiff's counterclaims for the millions of dollars in damages caused by the Landlord's admitted actions and breach of contract.

41.    The Oral Argument Transcript from February 17, 2017 also shows Plaintiff confronting Judge Ostrager with the false jury charge that he gave in a related matter and, only to have Defendant Barry Ostrager assert he does need to answer.

42.    At the February 17, 2017 Oral Argument, the Landlord's attorney does not dispute that the Personal Guarantees were voided by the Landlord's unlawful actions and inactions.  As shown further below, the Landlord's attorney never disputed the Landlord's unlawful actions but rather openly listed some of them in court, only to have Defendant ignore them entirely in his Jury Charge.

43.    A review of the January 27, 2017 (Exhibit 4) letter to Defendant Barry Ostrager, and the Oral Argument transcript from February 17, 2017 (Exhibit 5), shows that there were multiple reasons why the Personal Guarantees were voided as a matter of law and public policy, yet despite this fact Judge Barry Ostrager refused to carry out his judicial functions and did not adjudicate the issue as the decisions definitively prove.

8

44.    Immediately after the Oral Arguments, Judge Ostrager is shown discarding everything that was said during the hearing and rather than address the issue before him, he immediately ignored the triable issue that was before him.  All that was written was the following statements on the New York Supreme Court cover sheet:

> Granted to the extent of awarding Plaintiff's attorneys' fees in the sum of $350,000 together with interest at the statutory rate from January 1, 2012.

45.    Ignoring making a decision on Plaintiff's Personal Guarantees defense with the material evidence before him was a violation of Plaintiff's due process rights and 42 U.S.C 1983.  Defendant Barry Ostrager did not have jurisdiction to not issue a ruling, which is the opposite of a judicial act.

46.    No finding of fact or finding of law are mentioned in the handwritten cover sheets that would form the basis for why the Personal Guarantees were not voided as a matter of law and public policy.

47.    IGS Realty proceeded in April of 2017 to pursue a settlement of the judgment created by Judge Ostrager's refusal to adjudicate Plaintiff's defenses to the Personal Guarantees.

48.    On April 6, 2017, Plaintiff filed *Defendant's Opposition to Plaintiff's Motion for Settlement Judgment*.  As Exhibit 6 shows, it is filled with reasons why the Personal Guarantees were voided as a matter of law and public policy.

49.     The very next day on April 7, 2017 is shown ignoring and refusing to

adjudicate the claims and ignoring the Personal Guarantees defense. (Exhibit 3), proving

his retaliatory intent.

50.     Defendant Barry Ostrager's April 7, 2017 one-page handwritten Decision

on a cover sheet (Exhibit 3), written hours after Plaintiff had filed an *Opposition to

Settlement Judgment* (Exhibit 6), proves conclusively Barry R. Ostrager entirely

discarded and ignored the admitted to and undisputed reasons why the Personal

Guarantees were voided and James H. Brady did not owe the Landlord a penny.

51.     Defendant Barry Ostrager's April 7, 2017 hand-written decision states:

"Although defendant (Brady) has opposed the motion, his opposition does not address

the issue of interest raised in the motion sufficient to counter the dictates of CPLR

5001."

52.     Defendant Barry Ostrager knew the reasons why the Personal Guarantees

were voided as a matter of law and public policy and yet he deliberately chose to ignore

the law and not apply it to this case, which was absent from all jurisdictions.

53.     The words Personal Guarantees are not even mentioned in the handwritten

decisions that Judge Ostrager wrote on the cover sheet from February 17, 2017 and

April 7, 2017.

54.     Defendant Barry Ostrager further ignored and did not adjudicate the case

law and public policy contained in Plaintiff's *Opposition* showing that the Landlord was

statutorily prohibited from collecting on anything from Mr. Brady and profiting from his admitted unlawful acts.

55.     The February 17, 2017 Decision and the April 7, 2017 Decision show the $1,705,535.71 Plaintiff was forced to pay was unlawful court-created debt resulting from Defendant Barry R. Ostrager's refusal to carry out his judicial function and render a decision on the Personal Guarantees defenses.

> "The principal hallmark of the judicial function is a decision in relation to a particular case." *Mireles v. Waco,* 502 US 9 (Supreme Court 1991).

56.     No immunity could apply to a man who refuses to perform the paramount judicial function.

57.     A review of the video of the Appellate Division, First Department May 16, 2018 Oral Argument Archives proves that the Appellate Division judges also sat silent and refused to adjudicate the issue before the Court, which was Plaintiff's defense to the enforcement of the Personal Guarantees.

58.     A letter sent to the Appellate Division, First Department on May 18, 2018 (Exhibit 10) confronts them on their silence during the May 16, 2018 Oral Arguments, and that they had a duty to adjudicate the Personal Guarantee defense.

59.     Another letter to the Appellate Division sent on June 5, 2018 (Exhibit 11) "The transcript of the May 16, 2018 Oral Arguments shows this Court refused to answer whether the Merger Clause to the contract was breached by the Landlord even though the parties have always agreed it was."

60.     Two days later on June 7, 2018, the Appellate Division wrote a few sentence long decisions, deliberately refusing to adjudicate the Personal Guarantees defense.

61.     A review of the February 17, 2017, April 7, 2017 Decisions by Barry Ostrager, and the June 7, 2018 Appellate Division Decision proves neither the Supreme Court nor Appellate Division ever made a decision pertaining to Plaintiff's Personal Guarantees defenses.  The words "Personal Guarantees" are nowhere in any of the three decisions.

62.     The disdain for Plaintiff is so bad that they would like to see him pay $1,705,535.71 to an admitted scofflaw landlord whose attorney admitted voided the Personal Guarantees.

63.     The Appellate Division, First Department's June 7, 2018 decision (Exhibit 12) affirmed Defendant Barry Ostrager's April 7, 2017 decision, which expressly states Barry Ostrager, is ignoring Plaintiff's defenses, proving the issue of the Personal Guarantees was never adjudicated.

64.     The theory behind judicial immunity is that it's better to make a mistake than not make a decision at all.  "The risk of some error and possible injury from such error is better than not to decide or act at all." *James E. Tucker v. Maryland Outwish.*

65.     Plaintiff was forced to sell his family business and his life destroyed and pay a scofflaw landlord $1,705,535.71 because Defendant Barry Ostrager and the

Appellate Division refused "to make a decision" even though the IGS Realty Complaint (Exhibit 7) was nothing but a Personal Guarantee case.

## In a Related Case, Barry Ostrager Colluded with Opposing Counsel to Deny Plaintiff a Fair Trial in a Series of Non-Judicial Acts Outside Defendant Ostrager's Jurisdiction

66.     The June 23 to June 26, 2015 Trial was to pertain to Personal Guarantees only on the Landlord's side, and Plaintiff's counterclaims.  Exhibit 7 proves there were never any claims by the Landlord in the Amended Complaint of August 8, 2014 of any claims of wrongdoing on the part of Plaintiff or his companies.

67.     The Complaint filed in August 8, 2014 (Exhibit 7) by IGS Realty was for the enforcement of Personal Guarantees and nothing else.  As shown below, Defendant Barry Ostrager fabricated a jury charge in collusion with IGS Realty.

## Defendant Barry Ostrager's *Ex Parte* Meeting with the Landlord and His Attorney Robert Fass

68.     On June 23, 2015, Plaintiff could visually see Defendant Barry Ostrager, the Landlord's attorney Robert Fass, and the Landlord having an *ex parte* meeting in the courtroom.  This *ex parte* meeting was followed by Mr. Fass's opening statements, which for the first time in the entire case accused James H. Brady, Guarantor, engaging in unlawful activity.

69.     The Landlord's attorney Robert Fass's opening statement is incontrovertible proof that Defendant Barry Ostrager conspired with Mr. Fass in an *ex parte* meeting to change the course of the trial entirely and fabricate a false jury charge.

"Ifrah (the landlord) will show you that Mr. Brady's use was not permitted under applicable zoning building code requirements. In particular, although he claims to be running what is called a meeting hall --**and the Judge will charge you what that means--he was in fact an entirely different use known as a banquet hall**, which wasn't allowed in the district. And he did it from day one." (Transcript, June 23, 2015, p. 12). (R.989).

70.     Similarly, Mr. Fass's closing statements again proved the *ex parte* meeting and scheme with Defendant Barry Ostrager by mentioning a jury charge which Defendant Barry Ostrager would give the jurors without Plaintiff knowing a thing about it:

"The Judge will charge you on the law. **I ask you to listen very carefully because a key issue in this case was whether Mr. Brady was operating a meeting hall or banquet hall**.

We know they applied to the Department of Buildings under the section covering meeting halls. Mr. Ifrah had no idea exactly what the difference was, but Mr. Brady did. And he chose to misrepresent his use." (R. 881-882)

"He also makes an investigation as to what uses are permitted in the district. And he quite correctly claims that banquet halls, **as the Judge will charge you on what a banquet hall is**, are not permitted at all in the space. Meeting halls are permitted." (R. 883)

71.     Defendant Barry Ostrager then asked the Jury to determine whether Plaintiff's corporation was following a meeting or banquet hall floor plan:

"Mr. Brady claims that the premises were used as a meeting hall. Mr. Brady claims that due to the subsequent acts by plaintiff and subsequent failures to act by plaintiff, his corporations were unable to use the premises as a meeting hall as the term is defined by law, and that he incurred damages as a result.

Plaintiff disputes this claim. Plaintiff asserts that Mr. Brady's corporations did not use the premises as a meeting hall, but instead used them as a banquet hall. It is for you to decide what use the premises were used for." (R. 918)

14

<u>In order to award Mr. Brady any damages, you must find that during the major period of occupancy Mr. Brady's corporations were using the leased premises as a meeting hall. The plaintiff seeks to recover damages for breach the three leases.</u>" (R. 913-914).

72.     It was NOT for the jury to decide whether Mr. Brady's corporations were operating illegally; it was for the Department of Buildings to determine, and Plaintiff's corporations had never been cited or fined for unlawful use. Rather Mr. Brady had proved conclusively, and the Landlord never denied, that it was the Landlord who was operating illegally and paying thousands of dollars in fines.

73.     Defendant Barry Ostrager made it so Plaintiff had to prove his innocence, that his corporations were operating legally, and that if the jury (and not the DOB) determined they were operating with a different floor plan, Mr. Brady as Guarantor was liable for breach of contract. This was entirely outside Defendant Barry Ostrager's jurisdiction and was a blatant violation of every principle of a fair trial, due process or rule of law.

74.     Plaintiff complained three separate times about the unconstitutional change in the nature of the trial that was not disclosed until opening arguments, where Defendant Barry Ostrager and the Landlord's plot was revealed:

MR. BRADY: Yes. ("I object").

**<u>They made, they made new charges, your Honor, that my use was actually the one that was not lawful; and it was never raised on any</u>** -- it was not raised in the Complaint, it was not raised in the reply. It's never been raised until now, and I'm asking that it be precluded.

15

THE COURT: That motion is denied.  (R. 396)

75.    Plaintiff again objected to the Jury Charge was ignored by Defendant Barry Ostrager:

> "Secondly, what I would ask the Court to really consider is this last minute thing after six years that my use is really unlawful has not been made in their complaint, in their answer, or anything. First time day before yesterday, okay.
>
> **I'm not on trial on any of the issues that are in the complaint; it's him saying that I owe him money. And my thing is it's my counterclaims. This is something not mentioned in the complaint, never over six years.** And not my use is illegal, okay. My meeting hall use was not illegal." (R. 848).

76.    And for a third time, Defendant Barry Ostrager refused to answer Plaintiff or address the objection:

> "Nobody deserves it more, and I really would be so grateful at this stage, your Honor, **that they don't be permitted in their statement of facts to raise something for the first time after all those years**." (R. 850)

**The Jury Charge and Verdict Sheets Do Not Match, Which Proves Collusion and Violations of Plaintiff's Rights to Due Process and a Fair Trial**

77.    Defendant Barry Ostrager told the jury to determine whether Plaintiff's corporation was using a meeting or banquet hall floor plan, but the Verdict Sheet show something else: Defendant Barry Ostrager had NOT asked the Jury whether Plaintiff broke the contract with the Landlord, or that not following a certain floor plan was breach of contract.  Yet this is what the Verdict Sheets stated:  Breach of Contract. (Exhibit 13).

16

78.     In other words, Defendant Barry Ostrager gave the Jury in incorrect

definition of meeting hall and then used that verdict to fine the Guarantor of the lease,

James H. Brady, guilty of breach of contract.

79.     This was entirely outside Defendant Barry Ostrager's jurisdiction.  The *ex*

*parte* meeting with Mr. Fass and deliberately wrong jury charge were not judicial acts

and were outside his jurisdiction. Defendant Barry Ostrager has no immunity for these

non-judicial acts.  Changing the nature of the case during the trial itself is not a judicial

act.

80.     "A judge is not immune from liability for nonjudicial actions, i.e., actions

not taken in the judge's judicial capacity.  Second, a judge is not immune for actions,

though judicial in nature, taken in the complete absence of all jurisdiction." *Barrett v.*

*Harrington*, 130 F.3d 246, 255 (6th Cir. 1997).


**Defendant Barry Ostrager Conspired with the Landlord's Attorney Robert Fass of**
**Lying to the Jury and telling Them Operating Unlawfully, Breaking the Law and**
**Not Having a Certificate of Occupancy is No Big Deal**

81.     When Defendant Barry Ostrager was not lying to the Jury, he colluded with

Mr. Fass to allow the latter to lie and state over and over that Plaintiff could have simply

broken the law and continued to operate, that a certificate of occupancy for an event

rental space did not matter and was not necessary.  This proves the collusion between

Defendant Barry Ostrager and Mr. Fass in violating Plaintiff's due process and

Constitutional rights at trial.

"You know, the fact that somebody does something wrong does not mean that you're hurt." (R. 892)

"He operated fine without the C of O and nothing was ever said." (R. 893)

"Having a Certificate of Occupancy makes no difference" (R. 885)

"So after 2007 he didn't have a certificate of occupancy of any sort and not once did they throw him out." (R. 884)

"The law is not being enforced" (R. 886)

"Nobody cared" (R. 887)

"He said he had a Bible that he had to pull out with the certificate of occupancy, and he said that was necessary to show to the inspector. Guess what, in 2008, 2009, he had nothing in his Bible, so having a C of O makes no difference. Inspections are very cursory, unless they see something dangerous, or somebody makes a complaint then they will go and issue a violation." (R. 885)

"Mr. Ifrah has to pay the fines. No big deal. He's having inspections left and right; nobody's throwing him out. Nobody's throwing out the office tenants. They are just fining Mr. Ifrah." (R. 886)

"Up until a certain time all of them told him what are you worried about this case, the law is not being enforced." (R. 886)

"So all Mr. Brady had to do was wait. Nobody forced him out. He decided to leave." (R. 887)

"Mr. Brady didn't have to leave. His corporation could still be there. He could still be operating." (R. 892)

"You will find out that no tenant in any of the allegedly illegal uses wherever forced out by the Department of Buildings or any other agency in the city or the state. They are allowed to stay until building is legalized.  As a matter of fact,

some of them are allowed to stay whether the building is legalized or not. So to claim Mr. Brady left because of something Mr. Ifrah did is silly" (R. 448).

"The Building Department would come in and issue violations certainly if people complained; but if nobody complained, there wasn't a problem." (R. 446)

## At Trial, the Robert Fass Admitted the Landlord Voided the Personal Guarantees

82.    The Landlord's attorney Robert Fass on June 25, 2015 during closing arguments included admissions of Plaintiff's due diligence and of the Landlord's illegal actions after the leases were signed which voided the Personal Guarantees:

> "So let's begin at the beginning.  In 2001, Mr. Ifrah placed an ad in the New York Times. He (Brady) goes to the space, checks it out, and puts a deposit down a check on one of the spaces. Then speaks with his father who has great experience in real estate who tells him this is in the special garment district for zoning, so he better check out whether his use is permitted.

> So he puts a stop on the check and tells Mr. Ifrah he wants to do his due diligence, which he does.  And he checks the whole building from top to bottom, legal and physical conditions, and concludes that everything is fine. The building's legal, the physical conditions are legal, and everything else is in good and satisfactory condition. So then he writes another check and rents the space. After that in the same year and the following year he rents two other spaces" (R. 882).

## The Landlord's Attorney Admitted The Landlord Destroyed the Certificate of Occupancy and Broke the Lease

> "There is no doubt at the time after the leases were signed Mr. Ifrah started renting space and he had to pay a lot of fines to do it." (R. 888-889)

> So after 2007 he didn't have a certificate of occupancy of any sort." (R. 902)

## Mr. Fass Quotes the Following in His Memorandum of Law Showing that the Personal Guarantees Were Voided by These Actions

83.    "A guarantee will not be enforced where the modification"… impermissibly increased [guarantor's" risk] without his consent.... *White Rose Food*, 99 NY2d at 591; *Arlona Ltd. Partnership v 8th of Jan. Corp.*, 50 AD3d 933, 934 9 (First Dept 2008), and Williston Contracts states:

> "There can be no doubt that a guarantor, when sued alone by the creditor, can successfully resist by showing that the creditor, on his part, totally failed to perform his obligations to the principal.  In other words, the guarantor may always assert a total failure of consideration. This is because the guarantor is not liable unless the principal is bound (4 Williston Contracts (rev.ed) 1213)."

84.    These elements taken together prove the Personal Guarantees were voided by the Landlord's action.  Defendant Barry Ostrager knows this and knew at trial, which is why he refused to adjudicate the issue and switched the entire focus of the trial.

## Defendant Barry Ostrager Avoided the Material Evidence That Voided thPersonal Guarantees

85.    Judge Ostrager also stayed silent on addressing the fact that what he said was the "law" to the jury was proven to be false within the ten days that he gave to make objections in Appellant's Motion to Vacate.  The final words of Judge Ostrager on July 26, 2015 at trial were the following:

> THE COURT: That's the judgment of the jury. If anybody wants to make any motions, I'll provide the parties 10 ten days. Thereafter, the proposed judgment should be 11 submitted by plaintiff, which will be entered by the Court. (R.947).

86.    Specifically, Plaintiff submitted the Department of Buildings' approved floor plan that proves conclusively that Judge Ostrager's jury instruction on the what the

20

"law" was pursuant to the DOB, namely that to be classified as a "meeting hall" all attendees at an event had to facing in one direction like a theater, otherwise Mr. Brady owed the Landlord was incorrect and shown to be incorrect within the prescribed time period.

87.    In the subsequent motion to vacate, the undisputed assertions in Plaintiff's *Motion to Vacate*, July 6, 2015 (Exhibit 8) prove that Defendant Barry Ostrager ignored the material evidence of the case and continued his collusion with the Landlord's attorney Mr. Fass.

88.    Mr. Brady provided Defendant Barry Ostrager with the approved Department of Buildings floor plan proving to Judge Ostrager that his surprise claim that a "A meeting hall is defined as a space in which during the major period of occupancy the persons assembled comprise a seated or otherwise passive audience to the performance or presentation and have their attention focused in a common direction at a common subject" was false.

89.    Plaintiff Motion to Vacate (Exhibit 8) explains what occurred at trial, none of which Defendant Barry Ostrager has denied:

First, a reading Plaintiff's (the Landlord) attorney, Mr. Fass's June 23, 2015 opening arguments proves that there was an *ex parte* oral motion made by Plaintiff's to the Court, and decided in Plaintiff's favor, without Defendant (Brady) being made aware of the last minute motion or being able to oppose the motion.

This oral motion, which the court granted, did not pertain to a minor issue. It completely robbed Defendant of his day in Court, and shifted the entire focus of the trial to whether Defendant had been engaged in illegal activity.

90.    The fact that Judge Ostrager discarded the truth and the fact that his claim
was totally false proves collusion and a conspiracy between the Court and the Landlord
and his attorney.

91.    The Defendant Barry Ostrager and the conspirators agreed in an *ex parte*
meeting that the Court would make this false claim to the jury if Mr. Brady did not agree
to the $50,000 offered by the Landlord to settle.  Key to the conspiracy was that they
agreed that no one would claim that "A meeting hall is defined as a space in which
during the major period of occupancy the persons assembled comprise a seated or
otherwise passive audience to the performance or presentation and have their attention
focused in a common direction at a common subject" until the false claim was made by
Judge Ostrager to the Jury.

**Defendant Barry Ostrager Did Not Have Jurisdiction Over Plaintiff in 2018 When
Mr. Brady Pleaded with Him to Intervene After Proving Defendant Gave a False
Jury Charge and False Law**

92.    In 2018, James H. Brady sent Barry Ostrager the following letters
demanding that he fix the damage caused by his unlawful non-judicial acts, for which as
a State Employee he had a duty to intervene when presented with facts detailed in
Plaintiff's letters:

-        March 23, 2018 (Exhibit 14)
-        April 18, 2018  (Exhibit 16)
-        May 14, 2018  (Exhibit 17)

22

-    May 31, 2018  (Exhibit 18)
-    August 27, 2018  (Exhibit 19)

93.    Barry Ostrager refused to fix the damage his false claims made, because he

was promoted to the commercial division, because of the damage he caused to James H.

Brady.  Below are excerpts from Plaintiff's letters to Defendant, none of which

Defendant Barry Ostrager has ever denied, whereas an innocent party would have

denied the assertions in Plaintiff's letters.

## On March 23, 2018 the following excerpted letter was sent to Defendant Barry Ostrager; there was no reply (Exhibit 14)

Dear Justice Ostrager:

Enclosed you will find the _original_ architect's floor plan which proves beyond any doubt that the jury charge you gave was factually incorrect.

This is the actual Department of Building's approved floor plan that was seen by the Department of Buildings, the NYPD and the Fire Department each time they walked into one of my event spaces to perform inspections.

A PDF-sized version of this floor plan was included in my post-trial motion to vacate, but was ignored, not even mentioned in this Court's decision.  I again presented this Court with a copy of the floor plan in my motion to reargue, and then again at the fee hearings, and each time it was ignored.  This case is currently before the Court of Appeals and this Court's attention will help resolve the case fairly.

The floor plan proves Your Honor's jury charge was entirely wrong. The Public Assembly permit for Defendant's 11th floor at 336 West 37th Street shows the Department of Building permitted totally different room configurations from those the Court used as part of its Jury Charge.  The permit is clearly labeled "Meeting Hall Use Group Coca Occupancy F-1b, Total Number of Persons: 240."

The original floor plan shows this jury charge was wrong.  This is not an opinion or interpretation, but is proven wrong in black and white by comparing the

enclosed DOB-approved Meeting Hall floor plan with the jury instructions above. The $1.5 million judgment against me, and in favor of the Landlord stems exclusively from a jury charge that is incontrovertibly proven to be incorrect.

Your Honor cannot sit by and allow this injustice. This Court must write to the Court of Appeals and explain that you made an error at trial and the corresponding judgment must be set aside. Otherwise, the Court must show where the law states that a Meeting Hall must have all guests facing one direction like a theater, and that a Personal Guarantor has to pay if that floor plan is not followed by the corporate tenant.

As this Court knows and as the Landlord's Complaint shows, this was a case about personal guarantees. The jury charge did not include any instructions whatever regarding the guarantees but instead skipped over them by turning the case into the if...then proposition that if the corporate tenants arranged chairs in a certain direction, the Personal Guarantor was liable for $1.5 million. This was an overt Directed Verdict against me.

The Court ignored the entire analysis of whether the Personal Guarantor had defenses against the Landlord's claims of breach of contract but this Court ignored that entirely and did not allow any mention of my defenses and counter-claims. James H. Brady could not have broken the lease agreement because James H. Brady was neither the lessee nor the tenant. The Court skipped over this entire analysis and asserted that if the corporate tenants did not have all guests seated in one direction passively, then I as Personal Guarantor had no counterclaims for fraud in the inducement because you cannot be fraudulently induced into entering an illegal use contract. That too was a Directed Verdict.

I am again asking that this Court write to the Court of Appeals and explain the errors committed at the 2015 trial based on the incorrect jury instructions and incorrect definitions of Meeting Halls and Banquet Halls. This Court must acknowledge these errors, and the corresponding judgment that stems from these errors must be set aside.


**Two Days Later on March 30, 2018, Defendant Barry Ostrager's Secretary Wrote an Email That Did Not Deny Plaintiff's Claims in His Letter Showing Defendant the Floor plan (Exhibit 15)**

94.    Defendant Barry Ostrager instead replied with the absurd and untrue

assertion that there is no way for him, as a Commercial Division judge, to contact the

Court of Appeals and correct an error in a pending case.  This shows Defendant Barry

Ostrager's complicity and intentional culpability in retaliating against Plaintiff.

> Patricia L Della Peruta <plperuta@nycourts.gov> wrote:
> Mr. Brady,
> You may pick up the package on Monday. Go to Room 232 and ask the Clerk for
> the package. Unfortunately Alex Giuffre will be out on Monday and I do not have
> the name of his replacement at this time. If you have any difficulty, please call me
> at 646-386-4150 and I will assist.
>
> **The Court reviewed your letter. There is no procedure for the Judge to
> contact the Court of Appeals.**
>
> _____
> Patty Della Peruta
> Secretary to Justice Barry R Ostrager
> Supreme Court, New York County
> 60 Centre Street, Room 624
> New York, NY 10007


**On May 14, 2018 the following excerpted letter was sent to Defendant Barry
Ostrager; there was no reply (Exhibit 17)**

Dear Justice Ostrager:

This Court's jury charge was that if a particular floor plan was not followed by the
tenant-corporations that meant James H. Brady was himself in breach of contract
and therefore was liable to the Landlord.

The Jury Charge was shown to be false within the time period given by this Court
to file post-trial motions.  In a subsequent letter on March 2018, I provided you
with the original architectural plans that were approved by the New York State
Department of Buildings that proved your claim that "under the law" only one
floor-plan configuration was permitted by the DOB was completely wrong.

In my prior letter, I asked that you fix the mistake, or explain where you found the case law.  The Court has so far refused to correct its mistake.  When asked if the Court still held the same opinion regarding the Jury Charge, you first said yes and then dismissed my question by saying you did not need to answer.

This Court knows that as a matter of law, a person or entity that was not a party to a contract could not have broken the contract. In this case, the verdict and judgment were based on a breach of contract by a party that was never a party to the contract.

**On May 31, 2018 the following excerpted letter was sent to Defendant Barry Ostrager; there was no reply (Exhibit 18)**

Dear Justice Ostrager:

You have ignored my repeated pleads for your help in fixing the consequences of the totally false jury charge that you gave on June 26, 2015 that resulted in what is now a $1.5 million dollar judgment against me.

You completely ignored fixing your mistake and did not dispute that you knew you were lying when you told the jury that the only  "legal" floor plan for a meeting hall "is defined as a space in which during the major period of occupancy the persons assembled comprise a seated or otherwise passive audience to a performance or presentation and have their attention focused in a common direction at a common subject," otherwise personal guarantor James Brady (who was not even a tenant or a party to the contract personally) broke the contract and owed the Landlord what is now a $1.5 million dollar judgment.

You made up this totally false Jury charge and would not fix it because it was this criminal act that got you immediately promoted to a Commercial Division Judge. You were rewarded for doing the bidding of Commercial Division Judge Marcy Friedman and Commercial Division Judge Shirley Kornreich and the other corrupt judges that I have exposed on my website bullyjudges.com, and whom I have repeatedly pressed to have removed and prosecuted.

Your jury charge was absolutely retaliatory and made up solely by you. The landlord and his attorney made up the claim that my corporate tenants were actually illegal banquet halls only to get out of paying me any judgment the jury might award me. It was you alone that make up the false claim that if my

corporate tenants did not follow a particulate floor plan them I owed the landlord what is now a $1.5 million dollar judgment.

You were rewarded for all these retaliatory acts with an immediate promotion to the Commercial Division of the Manhattan Supreme Court. Records from a New York Law Journal article indicates that you were not even supposed to preside over cases above $500,000 in June 2015 because you were a brand new judge.

The only explanation for your conduct at the trial and refusal to fix the false jury charge that lead to a $1.5 million dollar judgment against me is the fact that it was getting this cruel, unjust decision against me got you promoted to a Commercial Division Judge. There are no other explanation exists for your actions, and if there is then explain it by June 7, 2018 in a letter that I can share with the law enforcement agencies investigating this matter.


**On August 27, 2018 the following excerpted letter was sent to Defendant Barry Ostrager; there was no reply (Exhibit 19)**

Dear Justice Ostrager:

I have a matter that needs your immediate attention. As you know, you presided over the case of *IGS Realty Co., LP v. James H. Brady*. As you also know, you were silent and never applied the law that voids personal guarantees to the facts in this case. I need you to do so, right now. You know that as a matter of law and public policy, the personal guarantees was voided by the landlord's repeatedly admitted illegal actions after the personal guarantees were signed.

You can prevent this scandal from growing and this crime from being committed by contacting the Court of Appeals today, and telling them that of your personal knowledge when the law is applied to the admitted facts, the personal guarantees are void as a matter of law and public policy.

As you know, violation sheets from the department of buildings proved to you that the landlord broke the lease and voided the personal guarantees through his unlawful conduct, which he pleaded guilty to repeatedly in court.

The personal guarantee issued is currently before the Court of Appeals, and you must contact them immediately and inform them of your first hand knowledge

that it was admitted to that the contract on which the personal guarantees applied were voided by the landlords subsequent unlawful conduct.

## Plaintiff Has Been an Enormous Force in Exposing Judicial Corruption in the New York State Courts

95.     It is undisputed by Judge Ostrager that he took over this case in June 2015 as a brand new judge for the express purpose of retaliating against and inflicting as much harm as possible on James H. Brady.  Defendant Barry Ostrager had no jurisdiction to hear the case.

96.     Plaintiff has maintained the website www.bullyjudges.com since 2009 which provides a documentary history of corruption in the New York Court System, and includes a large sample of the deprivation of rights committed under color of law by Defendant Barry Ostrager.  Plaintiff has also made numerous YouTube videos in which he discusses in detail the collusion between judges and politicians, and the consequences on the judiciary.

97.     Defendant Barry Ostrager has retaliated in part because of Plaintiff's journalistic activity in exposing the corruption of the courts.

98.     Defendant Barry Ostrager also retaliated on behalf of Governor Andrew Cuomo and was promoted to the Commercial Division as a reward for taking non-judicial actions to destroy Plaintiff without any jurisdiction but under color of law, showing a pattern of conspiracy and collusion that is clearly retaliatory.

99.   In 2015 James H. Brady was suing Andrew Cuomo in the New York State Court of Claims.  New York Court of Claims Judge Scuccimara appointed by Governor Cuomo dismissed the case on immunity grounds.  In a scheme with Governor Cuomo, Barry Ostrager was rewarded for the outrageous and unconstitutional destruction he caused by being promoted to the Commercial Division.

100.   In 2018, Plaintiff fought back hard in social media and through complaints to law enforcement officials against the corrupt actions of the Judges appointed by Andrew Cuomo.  In retrenchment, they retaliated with this criminal scheme.  This is standard operating procedure for Governor Andrew Cuomo.

101.   In a May 6, 2012, a New York Times article titled "The Heavy Hitters" by reporter Danny Hakim which states that Andrew Cuomo proclaimed "'I am the government' during a recent radio interview."

102.   The article went on to say the Governor Cuomo going national could be a challenge because Cuomo "places a premium on secrecy and bristles at opposition.  As the governors former top aide, Steven M. Cohen, recently described the Cuomo philosophy: We operate at two speeds, get along and kill."

## Judge Barry R. Ostrager Is Not Immune From a Civil Suit For Damages

103.   "Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (citation and internal quotations omitted). "A defendant is entitled to qualified immunity at the pleading stage if he can establish (1) that the complaint fails to plausibly plead that the defendant personally violated the plaintiff's constitutional rights, or (2) that the right was not clearly established at the time in question." *Turkmen v. Hasty*, 789 F.3d 218, 246 (2d Cir. 2015).

104.   "A judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997).

105.   "The Supreme Court has established a two-prong test to determine whether an act is 'judicial.'" *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997).  First, the Court must consider whether the function is "normally performed by a judge." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  Second, the court must assess whether the parties dealt with the judge in his or her judicial capacity. *Id.*

106.   None of the conduct described in this Complaint against Defendant Barry R. Ostrager is "normally performed by a judge."

107.   The outrageous, cruel and retaliatory actions described in this Complaint are not "normally performed by a judge."

108.   Making up false law and false jury charges is not conduct "normally performed by a judge."

109.   Felony forfeits legislative immunity, as in the Constitutional provision

stating that officeholders "They shall, in all cases, except treason, *felony*, and breach of

the peace, be privileged from arrest." U.S. Constitution, Article I, Section 6, Clause 1.


**There is No Immunity for Acts Done Outside a Judge's Jurisdiction**

110.   "It is true that as a general rule a judge can not be held criminally liable for

erroneous judicial acts done in good faith.  But he may be held criminally responsible

when he acts fraudulently or corruptly.  Judicial title does not render its holder immune

to crime even when committed behind the shield of judicial office. *Ex Parte*

*Virginia*, 100 U.S. 339, 348–349 (1880).

111.   The actions proven in this Complaint show that Defendant Barry Ostrager

deserves to be prosecuted criminally and civilly for his corrupt and fraudulent actions.

112.   "A judge will not be deprived of immunity because the action he took was

in error, was done maliciously, or was in excess of his authority, but, rather, he will be

subject to liability only when he has acted in the "clear absence of all jurisdiction."

*Bradley v. Fisher*, 13 Wall. 335, 80 U. S. 351. Pp. 435 U. S. 355-357.

113.   *McFarland v. State*, 109 N.W.2d 397 (1961), "The rule as to judicial

immunity is that a judicial officer, when required to exercise his judgment or discretion,

is not liable criminally for any error which he commits, provided he acts in good faith.

However, any judicial officer who acts fraudulently or corruptly is responsible criminally, whether he acts under the law or without the law."

## CAUSE OF ACTION NO. 1
## 42 U.S.C. §1983 – VIOLATION OF EQUAL PROTECTION
## AND DUE PROCESS

114.  Mr. Brady hereby incorporates by reference all averments in this Complaint.

115.  42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress.

116.  "To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir.1986),

117.  Defendant Barry Ostrager violated Plaintiff's right to equal protection and due process by refusing to adjudicate the Personal Guarantees and shifting the 2015 trial into a question of whether Plaintiff's corporations were operating a meeting or banquet hall.

118.   Defendant Barry Ostrager had no jurisdiction to hear Plaintiff's 2015 trial, and the trial was used under color of law to deprive Plaintiff of $1.7 million, his family business and livelihood, and the millions IGS Realty owed for breach of contract.

119.   Defendant Barry Ostrager's collusion with Governor Cuomo prior to the 2015 trial, and Defendant's collusion with the Landlord's attorney Robert Fass during the 2015 trial were overt violations of 42 U.S.C. 1983.

120.   The retaliation schemes that Judge Barry Ostrager participated in during a June 23, 2015 to June 26, 2015 related trial was filled with unconstitutional actions not taken in the judge's judicial capacity.

121.   The refusal to adjudicate the Personal Guarantees came after Plaintiff refused to accept Barry Ostrager's June 23, 2015 threat to accept the Landlord's IGS Realty offer to pay Plaintiff $50,000 to settle the dispute.

122.   Threatening a party in litigation is a non-judicial act, and retaliating for not caving into the threat, are not judicial acts.

123.   It is not a judicial act for a judge to refuse to adjudicate the issue that was before the court.

124.   It is not a judicial act for a court to collude with one side in a scheme of what the court would do if a party refused a settlement offer.

**Punitive Damages**

125.   Punitive damages Section 1983 provides that punitive damages are available against an individual-capacity defendant when such defendant's conduct is shown to be "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

126.   A punitive damage award is a limited remedy "reserved for special circumstances." *Savarice v. Agriss*, 883 F.2d 1194, 1205 (3d Cir. 1989). Whether such special circumstances exist which would provide a basis for an award of punitive damages is a question of fact that must be determined by the trier of fact.

## CAUSE OF ACTION NO. 2
## 42 U.S.C. §1985 – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

127.   Mr. Brady hereby incorporates by reference all averments in this Complaint.

128.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein before alleged.

129.   Section 1985(2) gives rise to a cause of action where "two or more persons conspire for the purposes of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws."

130.   Section 1985 allows an action to be brought by one harmed by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

131.   To state a claim under § 1985(3), Plaintiff must allege: (1) a conspiracy, (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Farber v. City of Patterson*, 440 F.3d 131 (3d Cir. 2006).

132.   "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin*, 403 U.S. at 102.


## Defendant Barry Ostrager Violated Every Element of 42 U.S.C. 1985

133.   Defendant Barry Ostrager's fabricated Jury Charge that had nothing to do with the Complaint filed by IGS Realty deprived Plaintiff of a fair trial and his violated his civil rights.  Defendant Barry Ostrager showed more than bias – he colluded with the

Landlord's attorney to railroad Plaintiff and is the direct, proximate cause of Plaintiff's loss of $1,705,535.71 and the millions owed by the Landlord for breach of contract.

134.   Defendant Barry Ostrager's collusion with Governor Cuomo to be installed in the Commercial Division outside his jurisdiction in order to retaliate against Plaintiff is a violation of Plaintiff's civil rights through a conspiracy to interfere with those rights.

135.   Defendant Barry Ostrager's collusion with Robert Fass, attorney for IGS Realty, was a conspiracy to engage in non-judicial acts outside Defendant Barry Ostrager's jurisdiction in the furtherance of retaliating against Plaintiff under color of law.

## CAUSE OF ACTION NO. 3
## VIOLATION OF CIVIL RICO 18 U.S.C.§1964(c)

136.   Mr. Brady hereby incorporates by reference all averments in this Complaint.

137.   18 U.S.C.§1964(c) identifies four factors that must be satisfied to establish standing for a civil RICO claim: (1) the plaintiff must be a "person" (2) who sustains injury (3) to its "business or property" (4) "by reason of" the defendant's violation of §1962.1."

138.    RICO's requirements of a culpable "person" who conducts the affairs of a distinct "enterprise" through a "pattern" of "racketeering" in a way that proximately causes injury.

139.    To state a claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 245 (1989).

140.    Each element of a RICO claim requires additional analysis: an "enterprise" is marked by association and control; a "pattern" requires a showing of "continuity"—continuous and related behavior that amounts to, or poses a threat of, continued criminal violations; and "racketeering activity" involves the violation of designated federal laws. *Giulliano v. Fulton*, 399 F.3d 381, 388 (1st Cir. 2005).

141.    "A Civil RICO claims can only survive if the plaintiff alleges that its injuries were proximately caused by the alleged RICO violation." *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (1st Cir. 2003).

142.    Defendant Barry R. Ostrager, Governor Andrew Cuomo and John and Jane Doe 1-100 engaged in a RICO enterprise that has been "continuous" pursuant to the statute.

143.    The enterprise included Governor Cuomo assigning Defendant Barry Ostager from the Court of Claims to the Supreme Court Commercial Division that he

had no jurisdiction to hear.  Defendant Barry Ostager had no jurisdiction to hear

Plaintiff's case against IGS Realty.

144.   In June of 2015 Judge Barry Ostrager was a brand new judge with

jurisdiction assigned by Governor Mario Cuomo to hear Court of Claims cases, not to

exceed $500,000.

145.   Judge Barry Ostrager only had jurisdiction over Court of Claims matters in

June of 2015 and was absent all jurisdictions to hear New York Supreme Court cases.

146.   The record proves Judge Ostrager created totally false law to the jury after

engaging in an *ex parte* meeting with Robert Fass and the Landlord.

147.   The record proves the Jury Charge and Verdict Sheet Interrogatories do not

match.  Defendant had the Jury find that one of Plaintiff's corporations used a certain

floor plan and then used that to rule Plaintiff had breached the contract.

148.   Defendant Barry Ostager did NOT give the same charge regarding the

Landlord: that if the Landlord had engaged in actions that breached the contract, he was

liable to Plaintiff. Defendant Barry Ostager kept Plaintiff's counterclaims from the Jury

and gave a directed verdict as part of the Civil RICO scheme.

149.   Plaintiff has maintained the website www.bullyjudges.com since 2009

which provides a documentary history of corruption in the New York Court System, and

includes a large sample of the deprivation of rights committed under color of law by

Defendant Barry Ostager.  Plaintiff has also made numerous YouTube videos in which

he discusses in detail the collusion between judges and politicians, and the consequences on the judiciary.

150.    Defendant Barry Ostrager has retaliated in part because of Plaintiff's journalistic activity in exposing the corruption of the courts.

151.    Defendant Barry Ostrager also retaliated on behalf of Governor Andrew Cuomo and was promoted to the Commercial Division as a reward for taking non-judicial actions to destroy Plaintiff without any jurisdiction but under color of law, showing a pattern of conspiracy and collusion that is clearly retaliatory.

152.    Defendant Barry Ostrager colluded with the Appellate Division, First Department judges to punish Plaintiff and retaliate against him.

153.    He colluded with the higher court judges to make sure Plaintiff's defense to the Personal Guarantees was never adjudicated.  All three courts – including the Court of Appeals, refused to carry out their judicial function, which is to make a decision. This was part of a Civil RICO retaliatory scheme.


### CAUSE OF ACTION NO. 4
### FAILURE TO INTERVENE

154.    Mr. Brady hereby incorporates by reference all averments in this Complaint.

155.    To establish a claim for failure to intervene, a plaintiff must prove the following four elements: (1) that a constitutional violation was being committed against

the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or was being, committed; (3) that the defendant Barry Ostrager had a reasonable opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable steps to intervene. *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 296 (N.D.N.Y. 2018).

156.    In the present case, elements one and two are easily shown by the letters and communications Plaintiff sent to Defendant Barry Ostrager during the course of litigation and after the trial.  Judge Ostrager had plenty of time and opportunity to intervene and prevent the harm (element #3), and of course Defendant Barry Ostrager failed to take any action (#4) and allowed the massive harm that befell Plaintiff by having to sell his family's business and commercial cooperative in order to pay a landlord who was statutorily prohibited from collecting.

157.    As a New York State employee, Defendant Barry Ostrager failed to intervene and take action when he knew a great injustice had been committed. Defendant Barry Ostrager was shown all the evidence required for him act as a state employee.

158.    The evidence shows that Defendant Barry Ostrager received and was aware of the letters sent by Plaintiff and have never denied any of the charges.

159.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained damages of $1,705,535.71 and all future revenue and income generated by the successful business he owned.

## CAUSE OF ACTION NO. 5
## DENIAL OF CONSTITUTIONAL RIGHT TO FAIR TRIAL

160.   Mr. Brady hereby incorporates by reference all averments in this Complaint.

161.   The Fourteenth Amendment to the United State Constitution reads, inter alia, "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

162.   "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

163.   "Bias or prejudice either in the trial itself or as imposed by external events will deny one's right to a fair trial." *Tumey v. Ohio*, 273 U.S. 510 (1927).

164.   Courts have found that contemptuous behavior in court may affect the impartiality of the presiding judge, so as to disqualify such judge from citing and sentencing the contemnors. *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971).

41

165.   Defendant Barry Ostrager's collusion with Robert Fass, attorney for IGS Realty, was a conspiracy to engage in non-judicial acts outside Defendant Barry Ostrager's jurisdiction in the furtherance of retaliating against Plaintiff under color of law.

166.   Defendant Barry Ostrager did far more than show bias; he changed the focus of the trial and railroaded Plaintiff through non-judicial acts outside his jurisdiction.  Plaintiff was denied his right to trial, and the trial itself was used to destroy Plaintiff and seize his property.

## CAUSE OF ACTION NO. 6
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

167.   Mr. Brady hereby incorporates by reference all averments in this Complaint.

168.   Intentional infliction of emotional distress has four elements: (1) the defendant Barry Ostrager must act intentionally or recklessly; (2) the defendant Barry Ostrager's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress.  *Hyatt v. Trans World Airlines*, 943 S.W. 2d 292 (1987).

169.   "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."  Restatement (Second) of Torts section 46 cmt. h (1965).

170.   "The court must determine whether an average member of the community upon learning of the facts alleged by plaintiff would exclaim "outrageous!" *Viehweg v. Vic Tanny Intern. of Missouri, Inc.*, 732 S.W.2d 212, 213 (Mo.App.1987).

171.   Defendant Barry Ostrager's actions and those of the broader RICO enterprise conspiracy have been deliberate and intentional infliction of distress on Plaintiff as they have been trying to break him.

172.   Defendant Barry Ostrager's actions are directly responsible for this inflection of emotional distress, including the brazenness with which Defendant Barry Ostrgaer carried on after Plaintiff had informed of them of the crimes.  The level of cruelty exhibited shocks the conscience of any civilized society.

173.   Plaintiff was left penniless with no occupation, his life's savings wiped out by Defendant's actions.

174.   The website www.Studio450.com shows what a gorgeous and amazing property he and his wife owned, and Plaintiff and his family would have nothing to live on had the portion of his wife's money not survived Defendant Barry Ostrager's crimes.

175.   These actions have caused huge mental and physical damage to Plaintiff.

## **PRAYER FOR RELIEF**

176.   **WHEREFORE,** Plaintiff seeks Damages to be determined by a jury of no less than $10 Million;

177.   And Punitive Damages pursuant to 42 U.S.C. 1983 to be determined by a jury at trial;

178.   And any such further relief as this Court deems just and proper.

DATED:  July 30, 2019

James Brady, *Pro se Plaintiff*
510 Sicomac Avenue
Wyckoff, NJ 07481.
bradyny@gmail.com

44

# EXHIBIT 1

CASHIER'S CHECK

SERIAL #: 6787001796

ACCOUNT#: 4861-509685

September 05, 2018

**$1,705,535.71**

VOID IF OVER US $ 1,705,535.71

NON-NEGOTIABLE

0067870     11/24
Office AU #     1210(8)

Remitter:
Purchaser:     FIRST AMERICAN TITLE INSURANCE COMPANY
               FIRST AMERICAN TITLE INSURANCE
Purchaser Account: 412145109
Operator I.D.:  ny001076
Funding Source:  ny001076
               Paper Item(s)

PAY TO THE ORDER OF     ***MARSHAL STEPHEN W. BIEGEL ***

***One million seven hundred five thousand five hundred thirty-five dollars and 71 cents**

NOTICE TO PURCHASER: IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO BANK MAY IMPOSE A FEE AND
REQUIRE AN INDEMNITY AGREEMENT AND BOND

Purchaser Copy

Payee Address:
Memo

WELLS FARGO BANK, N.A.
866 3RD AVE.
NEW YORK, NY 10022
FOR INQUIRIES CALL (480) 394-3122

Memo 70314612

CASHIER'S CHECK

6787001796

September 05, 2018

**$1,705,535.71**

VOID IF OVER US $ 1,705,535.71

AUTHORIZED SIGNATURE

0067870     11-24
Office AU #     1210(8)

Remitter:     FIRST AMERICAN TITLE INSURANCE COMPANY
Operator I.D.:  ny001076

PAY TO THE ORDER OF     ***MARSHAL STEPHEN W. BIEGEL ***

***One million seven hundred five thousand five hundred thirty-five dollars and 71 cents**

AUTHORIZED SIGNATURE

Payee Address:
Memo

WELLS FARGO BANK, N.A.
866 3RD AVE.
NEW YORK, NY 10022
FOR INQUIRIES CALL (480) 394-3122

⑆678700⑈796⑈ ⑆⑈⑇000248⑈⑈486⑈ 509685⑈

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

IGS REALTY CO, LP d/b/a IGS REALTY CO.,

INDEX NO.
603561/2009

        Plaintiff(s)

        Against

SATISFACTION OF
JUDGMENT

JAMES H. BRADY,

        Defendants(s)

A judgment was entered in the above entitled action on May 31, 2017 in the Supreme Court of the State of New York County of New York in favor of plaintiff IGS REALTY CO., LP d/b/a IGS REALTY CO. and against defendant JAMES H. BRADY for the sum of $1,705,535.71 which judgment was docketed on May 31, 2017 in the office of the Clerk of the County of New York and said judgment has been fully paid.

AND it is certified that there are no outstanding executions with any sheriff or Marshall within the State of New York,

THEREFORE, full satisfaction of said judgment is hereby acknowledged, and The Clerks are hereby authorized and directed to make an entry of full satisfaction on the docket of said judgment.

Dated: September 4, 2018

                                Philippe Ifrah, Principal Partner of IGS Realty Co., LP
                                The name signed must be printed beneath

State of New York, County of New York   ss.:

On the  4  day of Sept.   the year 2018, before me, the undersigned personally appeared, *Philippe Ifrah,* personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

                JULIANNE FRIEDMAN
          NOTARY PUBLIC, STATE OF NEW YORK
               NO. 02FR6218755
           QUALIFIED IN NASSAU COUNTY
        COMMISSION EXPIRES 5/8/23

# EXHIBIT 2

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    **BARRY R. OSTRAGER**                    PART  6/

_____ Justice

Index Number : 603561/2009                          INDEX NO. _____
IGS REALTY CO., L.P.                                MOTION DATE _____
vs
BRADY, JAMES H                                      MOTION SEQ. NO. _____
Sequence Number : 008
COUNSEL FEES, EXPENSES

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is granted to
the extent of awarding plaintiff attorneys'
fees in the sum of $350,000 together with
interest at the statutory rate from January
1, 2012.

Dated: 2-17-17                                      _____, J.S.C.
                                                    **BARRY R. OSTRAGER**

1. CHECK ONE: .................................................. ☑ CASE DISPOSED      ☐ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: .................... MOTION IS: ☑ GRANTED  ☐ DENIED  ☒ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: .................................. ☐ SETTLE ORDER           ☐ SUBMIT ORDER
                                                    ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

# EXHIBIT 3

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**BARRY R. OSTRAGER**

PRESENT: _____     PART _6/_

_____ *Justice*

Index Number : 603561/2009
IGS REALTY CO., L.P.
vs.
BRADY, JAMES H
SEQUENCE NUMBER : 009
MONEY JUDGMENT

INDEX NO. _____

MOTION DATE _____

MOTION SEQ. NO. _____

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is granted, and the Clerk is directed to enter judgment in favor of plaintiff IGS Realty Co. LP d/b/a IGS Realty Co. against James H. Brady in the amount set forth in the jury's award plus interest at the statutory rate from May 1, 2009, in addition to the Court's award of attorney's fees and interest thereon (see NYSCEF Doc. No. 290). This determination is made pursuant to CPLR 5001. Although defendant has opposed the motion his opposition does not address the issue of interest raised in the motion sufficient to counter the dictates of CPLR 5001.

Dated: _April 7, 2017_

_____, J.S.C.

**BARRY R. OSTRAGER**

1. CHECK ONE: ............................................ ☑ CASE DISPOSED    ☐ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ................MOTION IS: ☑ GRANTED  ☐ DENIED  ☐ GRANTED IN PART  ☐ OTHER

3. CHECK IF APPROPRIATE: ............................ ☐ SETTLE ORDER    ☐ SUBMIT ORDER

☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

FOR THE FOLLOWING REASON(S):

# EXHIBIT 4

January 27, 2017

James H. Brady
450 West 31st Street
12th Floor
New York, NY 10001
bradyny@gmail.com

Justice Barry Ostrager
60 Centre Street
Room 341
New York, NY 10013

Re: *IGS Realty Co., LP v. James H. Brady,* Index No. 603561/2009

Dear Justice Ostrager:

This Court has scheduled Oral Arguments for February 17, 2017 to review Plaintiff's legal fees totaling nearly $1.3 million. In order for the Court to award those fees, Your Honor would have to make two independent determinations. First, that the Landlord did not change and increase the risk under the leases from the good and satisfactory "as is" condition, compliant with fire safety laws, after Defendant signed the leases and personal guarantees. Secondly, the Court would have to determine that the Landlord did not act unlawfully in converting the building from the "as is" factory building condition guaranteed in the leases, to a DOB non-conforming office space building. New York blackletter law is clear that it is contrary to public policy that a landlord benefit from his own unlawful acts.

As the entire Record, including numerous admissions from Plaintiffs themselves, supports a determination that Plaintiff did increase the risk under leases, Defendant should be relieved of all liability under the personal guarantees. Furthermore, Plaintiffs acknowledged throughout their testimony and court papers that Mr. Ifrah deliberately altered the building in contravention of its certificate of occupancy, which means this Court cannot award Plaintiff legal fees, or any award stemming from his unlawful conversion of the subject building.

1

Once Defendant proved in Court that he had conducted due diligence, that the building was in an "as is" condition that allowed Plaintiff to operate his businesses legally, and that Mr. Ifrah had increased the risk under the leases, the Court should have relieved Plaintiff of all liability under the personal guarantees, and should not have reached the other issues the Court put before the jury.

Enclosed please find Appellant-Defendant's Reply Brief to the Appellate Division, First Department, January 11, 2017, so Your Honor can see all of Defendant's case was undisputed by IGS Realty.

Whether the Landlord changed the risk under the leases was the first question Plaintiff presented to the Court, and it remained a question never addressed by the Court and never given to the jury.  This error formed the basis for the incorrect jury instruction that led to a directed verdict.  Furthermore, as shown in the accompanying Reply Brief, pursuant to the leases, Your Honor should have determined whether the Landlord changed the risk.  Instead, the Record shows that the issue of the Personal Guarantees was never addressed directly by Your Honor at trial.  Accordingly, the issue has not been adjudged.

### Mr. Ifrah and His Attorneys Repeatedly Admitted They Changed the Risk

The Record is filled with admissions that the landlord changed the "as is" legal condition from good and satisfactory factory building to an illegal office building, where it became illegal and impossible for Defendant to operate his business.

There is no doubt at the time after the leases were signed Mr. Ifrah started renting space and he had to pay a lot of fines to do it.  He spent a lot of money to bring it into legal condition, to actually rent full offices which are far more valuable than anything else.  (Transcript, June 26, 2015, 380:23 – 381:3). (R.883)

In their Verified Answer to Appellant's Complaint in Supreme Court before Justice Madden (prior to consolidation), IGS Realty states in paragraph 4: "Denies the allegations of paragraph 41, 42 and 43, except admits that Brady conducted due diligence.  NO OFFICE TENANTS – emphasis

2

added." 5. "Denies the allegations of paragraph 45, except admits that the building complied with fire safety laws and that there were no violations relating to office use in the building." (September 29, 2014).  (Record No. 209).

This is a full admission that the Landlord changed and increased the risk.  When Mr. Brady signed the leases, there were no office tenants in the building.  Plaintiffs themselves acknowledge that. This admission is all the Court needs to find that Defendant is relieved of liability because of the Landllord's increase of risk.  Mr. Ifrah is well aware of this, which is why they offered $50,000 to settle

In paragraph 46 on page 6, Mr. Ifrah admits that I stopped the original check to ensure that his due diligence was conducted properly and thoroughly, specifically the legality of the premises, the certificates of occupancy, and the "as is" condition of the building required to operate my meeting halls.

In their answers to Defendant's counterclaims, Mr. Fass admitted that I conducted due diligence prior to entering into the leases, and that at that time there were no office tenants in the building.  In their Answer, Mr. Fass also admitted that the building complied with fire safety laws at the time the leases were signed.

Paragraph 54 of the Lease Rider specifically states: *Tenant acknowledges that it has inspected the Building and the demised premises, and agrees that Landlord shall not be obligated to make any improvements, or alteration to the demised premises to prepare it for the Tenant's occupancy or otherwise, and that Tenant will accept the demised premises in "as is" condition.*

The objection sheets and the violations prove that the illegal conversion of the subject premises is what caused the New York City Department of Buildings to refuse to renew the tenant/principals temporary certificates of occupancy.  Under the express terms of the lease stated above *"[a] signed writing against whom the party against whom enforcement of the chance, modifications, discharge or abandonment is sought..."* was required.  The leases are loft leases and the conversion was clearly a

modification.

The objection sheets and violations found in the record clearly show that the subject premises were unlawfully changed from the loft building given upon the execution of the leases. Furthermore, Plaintiff Philippe Ifrah admits that there were no violations for illegal use until after the last lease was executed in 2003.

In an affidavit filed in a related action *West Side Loft v. IGS Realty* Co., LP., 650463/2009 (the "Affidavit Further Support") Plaintiff Philippe Ifrah stated under oath that the parties agreed to leasing and acceptance of the demised premises "as is" and that Brady performed due diligence, by stating in pertinent part: "*Brady not only admitted to inspecting the premises and acknowledging that the spaces could be transformed into meeting spaces but he personally guaranteed all three leases. In fact, plaintiffs had an experienced engineer and family member also reviewed the leases before they were executed. Brady is a savvy businessman who has entered into many commercial leases and knew exactly what to look for.*"

Going back to the start of this litigation, Mr. Ifrah ackowledged the same set of facts as Defendant has: "The permitted use of the subject building was known or readily ascertainable to each of the Plaintiffs in 2002 and 2003 when they entered into their respective Leases. The zoning use for the subject building has not changed since the time the Plaintiff's entered into their respective Leases. The permitted use of the subject building has not changed since the time the Plaintiffs entered into their respective Leases." (*Affidavit*,  May 20, 2009, Para 14 & 15, R).

**The Law Regarding Personal Guarantees Relieves Defendant of All Liability, and Has Never Been Disputed**

In this case, what was guaranteed by Defendant was not what Plaintiff delivered.  In his opening statements, Mr. Fass himself quotes case and legal authorities supporting Defendant's counterclaim that

the Landlord's undisputed breach of the contract and conversion of the building to non-conforming office space

> There can be no doubt that a guarantor, when sued alone by the creditor, can succesfully resist by showing that the creditor, on his part, totally failed to perform his obligations to the principal.  In other words, the guarantor may always assert a total failure of consideration.  This is because the guarantor is not liable unless the principal is bound (4 Williston Contracts (rev.ed) 1213).

As shown in Appellant's Brief, the Landlord testified that he changes the use to office space because it was more profitable.  The personal guarantees pertained to an express lease that was a meeting hall lease in a loft factory building that was compliant with applicable laws.  The personal guarantees did not pertain to meeting hall use in an illegal office building that did not comply with local fire and safety regulations and laws.

This Court has held that a personal guarantee  of a lease is unenforceable when "the occupancy is illegal and in violation of the certificate of occupancy." *Kaplan v. Synergy, Inc.*, 23 Misc.3d 1123 (Civ. 2009).

A guaranty must be construed "in the strictest manner" (*White Rose Food v. Saleh*, 99 NY2d 589, 591 (2003). Guarantor cannot be held responsible for the failure of the principal to perform.  An alteration of the contract to which the guaranty applies will serve to discharge the guarantor's obligation unless the guarantor has consented to the alteration. See *White Rose Food v Saleh*, 99 NY2d 589 [2003]; *Davimos v Halle*, 35 AD3d 270 [2006.]). "A guarantee will not be enforced where the modification"… impermissibly increased [guarantor's" risk] without his consent.... *White Rose Food*, 99 NY2d at 591; *Arlona Ltd. Partnership v 8th of Jan. Corp.*, 50 AD3d 933, 934 9 (First Dept 2008) (refusing to enforce guarantee of commercial lease where underlying lease was modified).

In a case with facts strikingly similar to those presented here, the Fist Department has held "whether, in circumstances presented, an obligation to refrain from conduct which results in the loss of a building's certificate of occupancy should be implied involves factual questions for resolution at

trial." *Roli-Blue, Inc. v. 69/70[th] Street Associates*, 119 A.D.2d 173 (1st Dept. 1986).

*Roli-Blue* involved a tenant seeking damages because the Department of Buildings refused to issue a certificate of occupancy and public assembly permits necessary for the tenant to continue to conduct its restaurant business. The reason for the DOB's refusal was the landlord's structural changes made subsequent to the commencement of the lease which did not comply with code regulations. Very on point with the present case is the following:

> the tenant's intended use of the premises as a restaurant was lawful. Indeed, clause 2 expressly provides that the tenant may use the premises as a restaurant. While plaintiff has failed to support its contention of a statutory requirement that the landlord maintain a valid certificate of occupancy, such a duty may be inferred from the lease itself. <u>Use of the premises as a restaurant was lawful at the lease's inception, and a temporary public assembly permit had been issued</u>. While ordinarily, denial of a license precluding further use of the premises lawfully for the purpose for which the lease was intended does not relieve a lessee of an unconditional promise to pay rent where the parties understood that a license had to be obtained before the premises could be so used, <u>**a landlord may not render the contemplated use unlawful by his own conduct**</u>.

## IGS Rendered the Personal Guarantees Unenforceable When It Took Action That Made It Illegal and Impossible for Plaintiff's Businesses to Operate Meeting Halls on the Leased Premises

In the present case each of the guaranties was executed contemporaneously with the respective leases and must be read in conjunction with those leases to assure that the proposed use of the space for meeting halls was legally permitted. New York law is clear that the actions that Respondent has admitted to on the Record renders the personal guarantees unenforceable, relieving Appellant of all liability:

> In construing a contract, "An interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation." Therefore, "where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect." Furthermore, "agreements executed at substantially the same time and related to the same subject matter are regarded as contemporaneous writings and must be read together as one." *Perlbinder v. Board of Managers of the 411 East 53rd Street Condominium*, 65 A.D.3d.

**It is Against Public Policy to Allow a Scofflaw to Benefit from His Misfeasance**

The New York Court of Appeals has held that: "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes." *Carr v. Hoy*, 2 NY 2d 185, 187 (1957).

"It is the settled law of this State (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose." *Stone v. Freeman*, 298 NY 268, 271 (1948).

"Public policy prohibits recovery under a contract where a party engages in fraud or other immoral conduct in tendering its performance under the contract. As the Court of Appeals stated in *McConnell v. Commonwealth Pictures Corporations*, 7 NY 2d 465 (1960), "long-settled public policy closes the doors of our courts to those who sue to collect the rewards of corruption."

In the present case, there is no dispute that Plaintiff is operating a non-compliant building of illegal office spaces that violates the Special Garment District. The Plaintiff is a chronic scofflaw

**"When a court is asked to vacate an arbitral award on public policy grounds, "the focus of inquiry is on the result of the award itself."** *Matter of NYS Corrections Officers v. State of New York,* 94 NY2d 321, 327 (1999). "When the final result creates an explicit conflict with other laws and their attendant policy concerns," a court will vacate the award. *Id.*

In light of the foregoing and the attached Reply Brief, this Court should ude the February 17, 2017 Oral Arguments to make a determination that the Landlord Mr. Ifrah changed the risk under the leases, relieving Defendant of all liability under the Personal Guarantees. That is what the blackletter law of the State of New York requires this Court to do. The Court should further determine that the

7

Landlord cannot be rewarded for having broken the law, which is what the jury award amounts to as

there is no dipute that Mr. Ifrah unlawful altered the building from the condition it was in when

Defendant guaranteed the leases, thereby relieveing Defendant of all liability.


Thank you,


_____/s/_____

James Brady, *Pro se* Plaintiff
450 West 31st Street
12th Floor
New York, NY 10001
(201) 923-5511

# EXHIBIT 5

Case 1:19-cv-07122-LGS   Document 2   Filed 07/30/19   Page 62 of 152

1

1

2   SUPREME COURT OF THE STATE OF NEW YORK

3   COUNTY OF NEW YORK : CIVIL TERM : PART 61

4   ————————————————————————X

    IGS REALTY CO., LP. d/b/a IGS REALTY CO.,

5

6                    Plaintiff

                                      Index Number

7            - against -                 603561/09

8   JAMES H. BRADY

9                    Defendant

    ————————————————————————X

10                   60 Centre Street
                     New York, New York

11
                     February 17, 2017

12

13  B E F O R E :

14           HONORABLE BARRY R. OSTRAGER, Justice

    A P P E A R A N C E S :

15

    Attorneys for Plaintiff:

16

                 GREGORY SHEINDLIN, ESQ.

17               100 Church Street - 8th Floor
                 New York, New York 10007

18

19  Attorneys for Defendant:

20               JAMES BRADY, Pro Se

21

22

23

24               DENISE WILLIAMS, RPR
                 Official Court Reporter

25

26

                                                dw

Case 1:19-cv-07122-LGS   Document 2   Filed 07/30/19   Page 63 of 152

2

1                    -Proceedings-

2          THE COURT:  This is the Plaintiff's motion for

3    attorneys' fees pursuant to the provisions in the guarantee

4    executed by the Defendant which had an attorneys' fees

5    clause.

6          Let me hear the Plaintiff.

7          MR. SHEINDLIN:  Gregory Sheindlin for Plaintiff

8    IGS Realty.

9          Your Honor, as set forth in detail in the motion

10   papers, Plaintiffs are seeking attorneys fees in the amount

11   of $405,835 with pre-judgment interests associated with the

12   attorneys' fees in the amount of $159,745.  The total

13   amount is $565,580.  It's all set forth in the papers also.

14         What we describe in there is what we believe are

15   the reasonable services that were provided, the reasonable

16   fees or costs in association with those services would come

17   to the amount that I just described to you, and all of it's

18   associated with the fact that there were from 2009 to 2015

19   there were approximately eight different -- not

20   approximately, there were eight different litigations

21   associated with these three commercial leases and Mr. Brady

22   was the guarantee for each of these three leases for his

23   closely held companies that were leasing the spaces.

24         THE COURT:  Mr. Brady.

25         MR. BRADY:  Judge Ostrager, there are a number

26   different things that I want the Court to consider and a

                                                       dw

FILED: NEW YORK COUNTY CLERK 03/07/2017 09:47 AM

NYSCEF DOC. NO. 292

INDEX NO. 603561/2009

RECEIVED NYSCEF: 03/07/2017

3

1                          -Proceedings-

2        number of different ways that this Court can rule in my

3        favor on the personal guarantee.

4               Okay, there are a number of different ways that

5        somebody is not liable for personal guarantee, one of them

6        is if they change the risk.  That was stressed to you as a

7        matter of law, a guarantor is not responsible if the

8        landlord changes the risk.  It was undisputed throughout,

9        in fact it was said over and over again, that he increased

10       the rent, that he changed as is condition.  Mr. Fass goes

11       into great detail throughout three separate occasions --

12       four separate occasions its mentioned, sir, in regard to

13       the -- in their complaint itself, the reply, their answer,

14       it states that the building was compliant, that we did our

15       due diligence, that at the time there were no other law

16       office in the building and that it had a valid certificate

17       of occupancy and that it had -- there were no office use

18       tenants in the building.

19              As you know and as it was admitted over and over

20       again during the trial, that that risk was increased

21       according to Paragraph 21 of the lease.  Also, that any

22       change or alteration would need to be in writing.

23              I would need the Court to consider, too, there

24       would be no purpose of anybody doing their due diligence

25       and inspecting the building if the landlord was allowed to

26       later subsequently change that and increase the risk and

dw

4

1                    -Proceedings-

2    make it something else that was not guaranteed.

3    Specifically, they admit that with my client was aware of

4    what exactly needed to be done in regard to inspecting the

5    building.  He admitted that all these different things, so

6    the risk was increased when he no longer stayed compliant

7    with the law and he turned it any an illegal office

8    building.  That would be the first grounds for you to

9    vacate this.

10            The second would be on the public policy ground.

11   If you review and recall Robert repeatedly the landlord

12   admitted and his attorney admitted that he completely

13   violated the law and it was no big deal, nobody else was

14   following it and all these other things, and that he admits

15   that and they got multiple fines starting in the hundreds

16   into the thousands for not staying complaint and under that

17   also you are not supposed to permit somebody who benefits

18   the public policies that the words the courts propose two

19   people to do that.

20            So, that's the second one, and the third one is

21   the fraud and the inducement where it is undisputed that at

22   the time the leases were signed I did the inspections and

23   he did not tell me that he was going to turn it into an

24   illegal office building which would violate my use, and as

25   you recall, and it's throughout the record, they don't deny

26   any of this and it's affecting my ability to get a

                                                          dw

5

-Proceedings-

certificate of occupancy. The only thing Mr. Fass did was say over and over again that it's no big deal and that we could operate without a certificate of occupancy, which is not true.

The third -- the fourth thing I would like you to really consider, sir, is as you know you had an ex-party communication with them prior to the trial which shouldn't happened and it was during that time period that they frauded you and they told you that the only use of a meeting hall, and it's a quote from you, and you then subsequently turned around and told that to the jury -- gave a jury instruction that -- okay, and you said that it was defined by law, that it was the lawful definition, that the meeting hall is defined as a space in which during the major period of occupancy the premises assemble comprise of the seated or otherwise passive audience to a performance in presentation or presentation and have their attention focused in a common direction at a common subject. This gentleman had spoken about there being eight different proceedings that were before this Court. That was never asserted, sir. They told it to you in secret and it was wrong, deliberately wrong. Their architect never mentioned that and I subsequently said to you our public assembly plan which in the record on appeal is on page 1,005 and it showed that your instruction was completely wrong. There

dw

FILED: NEW YORK COUNTY CLERK 03/07/2017 09:47 AM
NYSCEF DOC. NO. 292

INDEX NO. 603561/2009

RECEIVED NYSCEF: 03/07/2017

6

-Proceedings-

1

2   was no -- for us to get a meeting hall permits the table

3   had to show tables facing all different rooms with no

4   common area.  That was all for the due diligence.  So, what

5   you told the Court as being the lawful definition of what a

6   meeting hall is was not true.  They knew it was not true.

7   They passed that to you as being truth when it wasn't.

8            As far as the -- as far as, two, the breach of

9   contract and prejudice that that caused, one of the jurors

10  was at the... were shown pictures with different things

11  that didn't match what you said was the lawful definition

12  and only way the meeting hall could be used, which was not

13  true, it wasn't the lawful thing it was abbreviation in his

14  own handbook due diligence proved that wasn't the case.

15  They presented that to you in secret and I don't understand

16  why the Court wasn't suspicious of that when it was never

17  raised, in fact, during the trial by anybody.  As far as

18  any of the witnesses never said I was using my space

19  lawfully, but I was able to be bashed as a liar -- lied to

20  the building department, lied to the building department,

21  all those things were never claimed by the witnesses that

22  day and the only person that was operating illegally which

23  was proven over and over again was the landlord.  All the

24  violations that he was building was using his floors.  Not

25  one of those objection sheets violation sheets was from my

26  illegal use.  We did everything right.  He did everything

dw

FILED: NEW YORK COUNTY CLERK 03/07/2017 09:47 AM

NYSCEF DOC. NO. 292

INDEX NO. 603561/2009

RECEIVED NYSCEF: 03/07/2017

7

-Proceedings-

1

2   wrong.  Public policy against it that mandates what he did

3   do talk about the further inducement he had no intention of

4   keeping my lease.  He used me every other -- the violation

5   sheets proved he got up to my floors 11 floors he turned

6   into illegal offices and it was my turn they acknowledge

7   over and over again the best use is office.  So he used me.

8   He didn't had no intention of staying compliant.  He never

9   told me he wasn't.  He admitted that.

10         So in those ways I ask the Court to consider that

11   in eliminating these fees and doing the right thing.  The

12   architect in saying that to you he never said it -- there

13   were eight different proceedings that were mentioned.  The

14   assertion that to be a legal meeting hall you had to face

15   one direction in a passive way was never claimed in any of

16   those proceedings.  It was first claimed by you in your

17   jury instructions and was wrong.

18         THE COURT:  Mr. Brady, unfortunately I don't have

19   a great deal of discretion here.  There was a jury trial in

20   this case and the jury effectively rejected any claim that

21   the landlord improperly altered the lease by finding no

22   breach on the part of the landlord.

23         I understand that you have an appeal from the

24   jury verdict.  It's not relevant to this proceeding, but

25   you know that I pleaded with you to resolve this jury case

26   before the case was submitted to the jury.

dw

FILED: NEW YORK COUNTY CLERK 03/07/2017 09:47 AM   INDEX NO. 603561/2009

NYSCEF DOC. NO. 292                                    RECEIVED NYSCEF: 03/07/2017

8

-Proceedings-

1

2    MR. BRADY:  Yes, you did, Your Honor.  Yes, you

3    did.

4    THE COURT:  There is a jury verdict in the case.

5    It's on appeal.  Under the law, in accordance with the

6    documents that you are bound by, the Plaintiff is entitled

7    to attorneys' fees.  I don't think that the landlord is

8    entitled to attorneys' fees from for the federal case which

9    I believe was unnecessary.  I believe some of the

10   attorneys' fees were excessive, so I'm entering judgment on

11   the attorneys' fee claim in the amount of $350,000 plus

12   interest at the statutory rate from January 1st, 2012, but

13   I'm staying enforcement of the judgment pending the outcome

14   of your appeal from the jury verdict in this case.  And my

15   hands are tied here.  There are legal consequences that

16   flow from the jury verdict that was entered in this case

17   and guarantees that you executed.

18        So, that's the judgment of the Court.  The

19   Plaintiff will order a copy of the transcript and I will

20   enter a short form order memorializing what appears in this

21   transcript.

22   MR. BRADY:  Thank you.  And I would like to add

23   something else, Your Honor.  Do you still believe what you

24   told the jury as the instruction of what meeting hall a

25   legal definition of meeting hall is is correct?

26   THE COURT:  I believe the jury instruction that I

9

-Proceedings-

gave was the proper jury instruction which is why I gave

the jury instruction that I gave to the jury.

MR. BRADY: Right, but didn't the floor plan and

pool plan that was submitted to you prove that what you

told the jury was wrong, sir?

THE COURT: I'm not here to answer your

questions. There is a judgment that was entered on a jury

verdict. You are appealing that judgment to the Appellate

Division. Whatever the Appellate Division decides will be

the outcome of the case unless one of the parties takes the

Appellate Division decision to the New York Court of

Appeals. But for purposes of today all I'm dealing with is

an application for attorneys' fees based on unambiguous

language in the guarantees that were executed predicated on

the outcome of the jury trial.

MR. BRADY: I appreciate that.

Your Honor, there are two other things. First of

all when you talk about the unambiguous language,

unambiguous language of which I did point out to you had

said with that the guarantee and it pertained to the space

Paragraph 21 of the as is condition that it was in at the

time possession was taken so it was -- that's very

unambiguous. It did not pertain to an illegal office

building that didn't apply that it entered into. The jury

was never given the option of, by you, you declined to

dw

10

1                        -Proceedings-

2        actually use the proper standard for me as the guarantor.

3        You had said I didn't mention it at all, but you said to me

4        the guarantor if I was constructively evicted that that's

5        not the standard.  The standard is did they increase the

6        risk and change the as is condition.  That's a standard.

7        Is it against public policy to award a man who did what he

8        did and by the way you held me to a double standard.  You

9        made it that the jury would have to decide also that and I

10       had to prove my innocence where you didn't say with the

11       landlord if he was shown to have acted unlawfully he would

12       not be able to collect on the guarantees.

13            So, I just want that on the record.  And the

14       other part I would ask the Court for is we are missing some

15       of the exhibits on the previous trial and I was hoping that

16       you would instruct the other side to help us with the few

17       exhibits that we need to for the record together.

18            THE COURT:  Yes.  Each side is responsible for

19       collecting at the end of the trial its own exhibits, but

20       given that Mr. Brady is proceeding pro se, if Plaintiff in

21       this case has exhibits that Mr. Brady is missing I would

22       expect that you would, as a courtesy to him to enable him

23       to effect his appeal, provide him with any documents that

24       were exhibits in the case that he doesn't have and you do

25       have.  Is that agreeable to you?

26            MR. SHEINDLIN:  Yes.  If we possess the exhibits

dw

11

1                        -Proceedings-

2       its agreeable.

3               THE COURT:  All right.  So I will take your word

4       as an officer of the court that you're going to cooperate

5       with Mr. Brady to enable him to have a complete record on

6       appeal in this case.

7               MR. SHEINDLIN:  Right.  Wherever it's reasonable.

8       Only reason I say that, I am not handling the appeal, Mr.

9       Fass is but my understanding is there may have been some

10      parts of the record or the creation of the record that were

11      including documents that were the record on appeal that

12      were including documents that were not part of the

13      underlying record.  So, I don't know what Mr. Brady is

14      going to ask for.  If its exhibits that we possess, of

15      course, we are going to give it to him.

16              THE COURT:  All we are agreeing to and you have

17      agreed to do this, is to provide Mr. Brady with any

18      exhibits that were admitted into evidence at trial which he

19      doesn't have copies of.

20              MR. SHEINDLIN:  The answer is yes.

21              THE COURT:  All right.  So, Mr. Brady he's

22      going -- opposing counsel is going to do that --

23              MR. BRADY:  Thank you, Your Honor.

24              THE COURT:  -- for you and whatever the outcome

25      is of the appeal that would be dispositive as to whether or

26      not these attorneys' fees will be tacked on to the

                                                            dw

12

-Proceedings-

judgment.

    MR. BRADY:  Thank you.

    THE COURT:  Okay.

    MR. BRADY:  Thank you.

    *        *        *

    CERTIFIED THAT THE FOREGOING IS A TRUE AND

ACCURATE TRANSCRIPT OF THE STENOGRAPHIC MINUTES IN

THESE PROCEEDINGS.



    DENISE WILLIAMS, RPR

    Official Court Reporter

SO ORDERED,

BARRY R. OSTRAGER, J.S.C.          3/7/17.

dw

# EXHIBIT 6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------X

IGS REALTY CO., L.P.,

　　　　　　　　　　　　　　　*Plaintiff,*　　　　　　　　Index No. 603561/2009

　　vs

JAMES H. BRADY,

　　　　　　　　　　　　　　　*Defendant.*

------------------------------------------------------------------X

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
## FOR SETTLEMENT OF JUDGMENT

　　　　The fees that Plaintiffs seeks pertain to legal fees associated with the prosecution of a personal

guarantee.  Defendant is currently appealing the improper jury instructions that led to the unjust and

wrong verdict by the jury.   The court is asked to set aside any Decision till the outcome of the

Appellate Division Decision.

　　　　The Record in this case shows and undisputed (and freely admitted to by the landlord and his

attorney) that the landlord breached the lease, the Merger Clause and the law when he unlawfully

converted his Garment factory building into an illegal office building after the leases and personal

guarantees were signed.

　　　　At no point prior to Mr. Fass's opening statements had Respondent's made the assertion that

Defendant was operating a banquet hall in contravention of the certificate of occupancy that was for a

meeting hall.  The lower Court charged the jury with the  instruction that if they found that Defendant

was operating a banquet hall, they must find for Respondent.  The Court did so based on the false

definitions of meeting and banquet halls given by Mr. Fass during his opening remarks.  The Court

further did NOT instruct the jury that if they found that Mr. Ifrah had violated DOB regulations, and

had lied to the NY Fire Department about having a fire alarm system, they must find for Defendant

Brady.

1

In his opening statements, Mr. Fass himself quotes case and legal authorities supporting Defendant's counterclaim that the Landlord's undisputed breach of the contract and conversion of the building to non-conforming office space

> There can be no doubt that a guarantor, when sued alone by the creditor, can succesfully resist by showing that the creditor, on his part, totally failed to perform his obligations to the principal. In other words, the guarantor may always assert a total failure of consideration. This is because the guarantor is not liable unless the principal is bound (4 Williston Contracts (rev.ed) 1213).

The Landlord testified that he changes the use to office space because it was more profitable. The personal guarantees pertained to an express lease that was a meeting hall lease in a loft factory building that was compliant with applicable laws. The personal guarantees did not pertain to meeting hall use in an illegal office building that did not comply with local fire and safety regulations and laws.

## PUBLIC POLICY MANDATES THAT LANDLORD IFRAH NOT PROFIT FROM BEING A SCOFFLAW

The New York Court of Appeals has held that: "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes." *Carr v. Hoy*, 2 NY 2d 185, 187 (1957).

"It is the settled law of this State (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose." *Stone v. Freeman*, 298 NY 268, 271 (1948).

"Public policy prohibits recovery under a contract where a party engages in fraud or other immoral conduct in tendering its performance under the contract. As the Court of Appeals stated in

*McConnell v. Commonwealth Pictures Corporations*, 7 NY 2d 465 (1960), "long-settled public policy closes the doors of our courts to those who sue to collect the rewards of corruption."

In the present case, there is no dispute that Plaintiff is operating a non-compliant building of illegal office spaces that violates the Special Garment District. The Plaintiff is a chronic scofflaw

"When a court is asked to vacate an arbitral award on public policy grounds, "the focus of inquiry is on the result of the award itself." *Matter of NYS Corrections Officers v. State of New York*, 94 NY2d 321, 327 (1999). "When the final result creates an explicit conflict with other laws and their attendant policy concerns," a court will vacate the award. *Id.*

**The Court's Erroneous Jury Charge**

Below it is clear that the Court presented to the Jury the same definitions of Meeting Halls found in Plaintiff's June 25, 2015 Memorandum of Law. This made Defendant look like a liar before the Jury:

> Plaintiff's claims that the leases it had with the corporations of the defendant, James Brady, required that the use -- the corporation's use and occupy the spaces only as meeting halls as defined by the law, but that instead he used them as banquet halls. <u>A meeting hall is defined as a space in which during the major period of occupancy the persons assembled comprise a seated or otherwise passive audience to a performance or presentation and have their attention focused in a common direction at a common subject.</u> A banquet hall is defined as a space which during the major period of occupancy, persons assemble for dancing or for the consumption of food and drink, or any combination of dancing, eating or drinking or entertainment.

> In order to award Mr. Brady any damages, you must find that during the major period of occupancy Mr. Brady's corporations were using the leased premises as a meeting hall. The plaintiff seeks to recover damages for breach of the three leases. (Transcript, June 26, 2015, p. 405:2-26 & p. 406:2-14). (R.394).

The Record is filled with admissions that the landlord changed the "as is" legal condition from good and satisfactory factory building to an illegal office building, where it became illegal and impossible for Defendant to operate his business.

The Jury Decision was against the weight of the evidence.  A jury cannot claim that the landlord did not breach the lease when it is admitted to repeatedly by the landlord and his attorney.  The landlord in the present case admitted that he unlawfully converted the building to office space so he could charge more rent.  Mr. Ifrah fraudulently induced Defendant Brady into moving into the building to use Defendant's meeting halls as showing spaces to lure office tenants to the building.

This case will also be reversed on the merits by the Appellate Division because the landlord's attorney admits that Defendant Brady did his due diligence prior to closing, and that the building had no office clients at that time and was compliant with fire safety laws at the time the leases were signed.

Plaintiff's September 27, 2014 Verified Answer admits "that Brady conducted Due Diligence," which is an admission that Defendant must be relieved of all liability under the personal guarantees.

As a matter of law, "A guarantee will not be enforced where the modification"... impermissibly increased [guarantor's" risk] without his consent.... *White Rose Food*, 99 NY2d at 591; *Arlona Ltd. Partnership v 8th of Jan. Corp.*, 50 AD3d 933, 934 9 (First Dept 2008) (refusing to enforce guarantee of commercial lease where underlying lease was modified).

A guaranty must be construed "in the strictest manner" (*White Rose Food v. Saleh*, 99 NY2d 589, 591 (2003). Guarantor cannot be held responsible for the failure of the principal to perform.  An alteration of the contract to which the guaranty applies will serve to discharge the guarantor's obligation unless the guarantor has consented to the alteration. See *White Rose Food v Saleh*, 99 NY2d 589 [2003]; *Davimos v Halle*, 35 AD3d 270 [2006.]).

The Jury's verdict did not include a finding of whether Plaintiff had changed the building from its "as is" condition, nor did the Jury find whether Plaintiff increased the risk under the personal guarantees.

The "Merger Clause" can only be construed as an agreement between the parties that the building would stay in the good and satisfactory condition it was in at the time the leases were signed. The Landlord breached this clause by not obtaining Tenant's signed agreement that the building could be converted to illegal office spaces that were non-compliant with fire safety laws.

Since each and every part of paragraphs 15 and 21 was breached by the Landlord, it is against the weight of the evidence for the Jury to determine that Tenant breached the Leases rather than the Landlord.  The Appellate Division will reverse the decision based on the undisputed fact that the Landlord breached every part of these two contract provisions.

The New York Court of Appeals has held that:  "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes." *Carr v. Hoy*, 2 NY 2d 185, 187 (1957).

"It is the settled law of this State (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose." *Stone v. Freeman*, 298 NY 268, 271 (1948).

"Public policy prohibits recovery under a contract where a party engages in fraud or other immoral conduct in tendering its performance under the contract.  As the Court of Appeals stated in *McConnell v. Commonwealth Pictures Corporations*, 7 NY 2d 465 (1960), "long-settled public policy closes the doors of our courts to those who sue to collect the rewards of corruption."

In the present case, there is no dispute that Plaintiff is operating a non-compliant building of illegal office spaces that violates the Special Garment District.  The Plaintiff is a chronic scofflaw.

"When a court is asked to vacate an arbitral award on public policy grounds, "the focus of inquiry is on the result of the award itself." *Matter of NYS Corrections Officers v. State of New York,* 94 NY2d 321, 327 (1999). "When the final result creates an explicit conflict with other laws and their attendant policy concerns," a court will vacate the award. *Id.*

The trial transcript proves the landlord fraudulently induced Defendant to enter into the leases without revealing that he had no intention of staying compliant with the law. The transcript shows the landlord, his attorney and his architect mocking the Garment Preservation District laws and arguing that it was perfectly acceptable to ignore them.

In New York state, "a plaintiff must assert the misrepresentation of a material fact, which was known by the defendant to be false and intended to be relied on when made, and that there was justifiable reliance and resulting injury." (*Braddock v Braddock*, 60 AD3d 84, 86 [1st Dept 2009]; see *Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 348 [1999]).

Additionally, a plaintiff alleging fraud must state "the circumstances constituting the wrong . . . in detail" (CPLR 3016 [b]). The Court of Appeals has held that CPLR 3016 (b) requires a plaintiff claiming fraud to "allege the basic facts to establish the elements of the cause of action"; the plaintiff need not provide "unassailable proof" (*Pludeman v N. Leasing Sys., Inc.*, 10 NY3d 486, 492 [2008]). A pleading will be proper under this standard "when the facts are sufficient to permit a reasonable inference of the alleged conduct." *Id.*

The Record shows that Respondent had planned to convert the building to illegal office use prior to signing the leases with Defendant James Brady. As early as 2001, he was placing ads in the New York Times looking for office, i.e. illegal, tenants. Mr. Ifrah used Defendant's floors as showrooms to entice new tenants, all the while undermining Defendant's business and eventually driving him from the building.

Fraudulent inducement is defined as "a material misrepresentation, known to be false, made with the intention of inducing reliance, upon which the victim actually relies, consequently sustaining a detriment." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Group, LLC,* 19 AD3d 273, 275 (2005).

## CONCLUSION

The Record proves: 1) the Landlord and his attorney themselves admitted that the Landlord breached the contract; 2) that Tenant was fraudulently induced into signing the Leases; 3) there is no basis in the record for the Court to conclude that Defendant was not blind-sided by the Court permitting new triable issues and defenses during its *ex parte* meeting with Plaintiff; and 4) the Court in effect gave a directed verdict against Defendant in which the Jury would be required to find that Defendant breached the Leases if, in the Court's insistence that under applicable law, Defendant would be in breach of contract if he used any other floor-plan than one with all chairs "facing one direction with a common viewpoint," which was an incorrect statement of the law; and 5) the Court cut-off Defendant and legal adviser from speaking and finishing their objections to the Jury Charges.

The three questions presented to the jury came back with the opposite conclusion based on the trial, as the Record shows. There was no evidence presented at trial that Defendant breached the contract. It is impossible for a reasonable juror to conclude that Plaintiff did not reach the implied warranty of good faith or breached the leases when Plaintiff admits repeatedly throughout the trial that he breached both.

Further, all the criteria for Defendant counterclaim for fraudulent inducement were met. Judge Ostrager changed the nature of the trial after Defendant refused a $50,000 offer from Respondent Philippe Ifrah. As the Record and Brief will show, the trial changed from the issues argued in Respondent's Complaint and Defendant Answer with Counterclaims, to an entire new and extraneous issue of whether the chairs in one of Defendant's meeting halls faced in a certain direction. This last

7

minute surprise by Respondent's and by the Supreme Court, which had not been part of the Complaint nor of any other court paper in these cases, warrants a reversal of Judge Ostrager's August 25, 2015 Order.

DATE:  April 4, 2017

/s/

James Brady
Studio 450, 12th Floor
450 West 31st Street
New York, NY 10001
bradyny@gmail.com

8

# EXHIBIT 7

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------

IGS REALTY CO, L.P., d/b/a
IGS REALTY CO.,

                                        Plaintiff,

                    - against -

JAMES H. BRADY,

                                        Defendant.

-----------------------------------------------------------------------

**COMPLAINT**

Index No.: 603561/2009

Hon. Joan A. Madden, Justice

Plaintiff, IGS REALTY CO, L.P., as and for its Complaint alleges as follows:

1.      Plaintiff is a limited partnership duly organized and existing under the laws of the State of New York.  At all relevant times Plaintiff was and still is the owner of real property and the building thereon known as The Arts Building located at 336 West 37th Street, New York, NY 10018 (the "Building").

2.      Defendant, James H. Brady, is an individual who is the guarantor and signatory of three commercial leases for space at the Building.

### FIRST CAUSE OF ACTION

3.      On or about January 3, 2002, Plaintiff leased to James Catering Corp., a corporation wholly owned by Defendant, the entire eleventh floor of the Building pursuant to written lease for a specified rent with annual increases and containing escalation charges for additional rent including water charges, sprinkler charges utility charges, and tax increases.  In addition, the lease provided for a 5% late fee for amounts

five or more days in arrears and finance/interest charges of 1.8% per month on amounts 30 or more days in arrears.

4.      As an inducement to enter into the lease, for good and valuable consideration, Defendant duly executed a Guarantee ("Guarantee #1"), which by its terms absolutely, unconditionally and irrevocably guaranteed payment of all amounts payable by tenant under the lease up to the "Surrender Date" as that term is defined in the Guarantee #1.

5.      Additionally, Guarantee # 1 provides that Defendant shall pay to Plaintiff the costs including attorneys' fees, court costs and other expenses of enforcing or attempting to enforce" the guarantee..

6.      By its terms, Guarantee #1 is a guarantee of payment and performance, not of collection.  Guarantee #1 may be enforced without the necessity of resorting to or exhausting any other security or remedy and without the necessity at any time of having recourse to the tenant.

7.      The Surrender Date when James Catering Corp. vacated and surrendered the Premises and delivered the keys to Plaintiff was October 1, 2009.

8.      As of the Surrender Date, James Catering Corp. owed Plaintiff $205,158.81 for amounts due under its lease with Plaintiff.

9.      Plaintiff is entitled to damages from Defendant in the amount of $205,158.81, together with interest, attorney's fees, and the costs and expenses of this action.

2

## SECOND CAUSE OF ACTION

10.   On or about November 19, 2002, Plaintiff leased to Loft Eleven, Inc., a corporation wholly owned by Defendant, the entire fifteenth floor of the Building plus roof rights for a specified rent with annual increases and containing escalation charges for water charges, sprinkler charges utility charges, and tax increases.  In addition, the lease provided for a 5% late fee for amounts five or more days in arrears and finance/interest charges of 1.8% per month on amounts 30 or more days in arrears.

11.   As an inducement to enter into the lease, for good and valuable consideration, Defendant duly executed a Guarantee ("Guarantee #2"), which by its terms absolutely, unconditionally and irrevocably guaranteed payment of  all amounts payable by tenant under the lease up to the "Surrender Date" as that term is defined in the Guarantee #2.

12.   Additionally, Guarantee #2 provides that Defendant shall pay to Plaintiff the costs including attorneys' fees, court costs and other expenses of "enforcing or attempting to enforce" the guarantee.

13.   By its terms, Guarantee #2 is a guarantee of payment and performance, not of collection.  Guarantee #2 may be enforced without the necessity of resorting to or exhausting any other security or remedy and without the necessity at any time of having recourse to the tenant.

14.   The Surrender Date when Loft Eleven, Inc. vacated and surrendered the Premises and delivered the keys to Plaintiff was October 1, 2009.

3

15.     The Surrender Date when Loft Eleven, Inc. vacated and surrendered the Premises and delivered the keys to Plaintiff was October 1, 2009.

16.     As of the Surrender Date, Loft Eleven, Inc. owed Plaintiff $255,350.26 under its lease with Plaintiff.

17.     Plaintiff is entitled to damages from Defendant in the amount of $255,350.26, together with interest and attorney's fees and the costs and expenses of this action.

THIRD CAUSE OF ACTION

18.     On or about July 21, 2003, Plaintiff leased to West Side Loft Inc., a corporation wholly owned by Defendant, the entire sixth floor of the Building for a specified rent with annual increases and containing escalation charges for water charges, sprinkler charges utility charges, and tax increases.  In addition, the lease provided for a 5% late fee for amounts five or more days in arrears and finance/interest charges of 1.8% per month on amounts 30 or more days in arrears.

19.     As an inducement to enter into the lease, for good and valuable consideration, Defendant duly executed a Guarantee ("Guarantee #3"), which by its terms absolutely, unconditionally and irrevocably guaranteed payment of all amounts payable by tenant under the lease up to the "Surrender Date" as that term is defined in Guarantee #3.

20.     Additionally, Guarantee #3 provides that Defendant shall pay to Plaintiff the costs including attorneys' fees, court costs and other expenses of enforcing or attempting to enforce the guarantee.

4

21.     By its terms, Guarantee #3 is a guarantee of payment and performance, not of collection.  Guarantee #3 may be enforced without the necessity of resorting to or exhausting any other security or remedy and without the necessity at any time of having recourse to the tenant.

22.     The Surrender Date when West Side Loft, Inc. vacated and surrendered the Premises and delivered the keys to Plaintiff was October 1, 2009.

23.     As of the Surrender Date, West Side Loft, Inc. owed Plaintiff $254,121.31 under its lease with Plaintiff.

24.     Plaintiff is entitled to damages from Defendant in the amount of $254,121.31 together with interest and attorney's fees, costs and expenses of this action.

FOURTH CAUSE OF ACTION

25.     When the West Side Loft Inc. lease was signed by Defendant, West Side Loft, Inc. was not incorporated.

26.     Defendant, as the signatory of that lease, is personally liable for all sums due pursuant to that lease.

27.     Plaintiff is entitled to damages in an amount not less than $254,121.31, plus continuing interest at the lease rate of 1.8% per month for every month after October 2009  and Plaintiff's  attorneys fees, costs and expenses as provided for in the lease in amounts to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendant for damages: on the First Cause of action in the amount of $205,158.81; on the Second Cause of action in the amount of $255,350.26; on the Third Cause of action in the amount of $$254,121.31,

5

plus interest, attorney's fees, and the costs and expenses of these actions; on the Fourth

Cause of Action in amount to be determined at trial t not less than $254,121.31, plus

continuing interest at the lease rate of 1.8% per month for every month after October

2009  and  attorneys fees, costs and expenses as provided for in the West Side Loft Inc.

lease; and for such other and further relief as may be just and proper.

Dated: New York, New York
        August 8, 2014

                            GOLDSMITH & FASS


                    By: _____
                            Robert N. Fass
                        Attorneys for Plaintiff
                        360 Lexington Avenue
                        14th Floor
                        New York, New York 10017
                        (212) 823-0936


6

# EXHIBIT 8

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
IGS REALTY CO., L.P.,

                                   *Plaintiff*,                    Index No. <u>603561/2009</u>

-against-

JAMES H. BRADY,

                                   *Defendant*.
-----------------------------------------------------------------------X


### DEFENDANT'S AFFIDAVIT IN SUPPORT OF POST-TRIAL MOTION FOR JUDGMENT AND NEW TRIAL PURSUANT TO CPLR § 4404, OR ALTERNATIVELY FOR A STAY PURSUANT TO CPLR § 5519

1.      The Court is respectfully asked to vacate the jury verdict and grant a new trial in the case of *I.G.S. Realty, LLC v. James H. Brady*, Index No. 603561/2009.  This court has the authority and responsibility to vacate the decision for numerous independent reasons.

2.      CPLR § 4404, "Post-trial motion for judgment and new trial," states that:

> (a) Motion after trial where jury required.  After a trial of a cause of action or issue triable of right by a jury, upon the motion of any party or on its own initiative, *the court may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence*, in the interest of justice or where the jury cannot agree after being kept together for as long as is deemed reasonable by the court.

> (b) Motion after trial where jury not required.  *After a trial not triable of right by a jury, upon the motion of any party or on its own initiative, the court may set aside its decision or any judgment entered thereon*.  It may make new findings of fact or conclusions of law, with or without taking additional testimony, render a new decision and direct entry of judgment, or it may order a new trial of a cause of action or separable issue.

### Discussion

3.      First, a reading Plaintiff's attorney, Mr. Fass's June 23, 2015 opening arguments

proves that there was an *ex parte* oral motion made by Plaintiffs to the Court, and decided in

Plaintiff's favor, without Defendant being made aware of the last minute motion or being able to

oppose the motion.  This oral motion, which the court granted, did not pertain to a minor issue.

It completely robbed Defendant of his day in Court, and shifted the entire focus of the trial to

whether Defendant had been engaged in illegal activity.

4.      This fact that the *ex parte* oral motion was made and granted is proven by looking

at Mr. Fass oral arguments, in which he states the following:

> "Ifrah (the landlord) will show you that Mr. Brady's use was not permitted under
> applicable zoning building code requirements.  In particular, although he claims
> to be running what is called a meeting hall --and the Judge will charge you what
> that means--he was in fact an entirely different use known as a banquet hall,
> which wasn't allowed in the district.  And he did it from day one."  (Transcript,
> June 23, 2015, p. 12).

5.      This statement shows that during the *ex parte* meeting, Plaintiffs gave the Court

something and presented it as the meaning of the term "Meeting Hall."  Defendant was not there

to see or oppose what was given to the Court.

6.      The allegation that Defendant operated a Banquet Hall and not a Meeting Hall as

stated in the lease was never part of Plaintiff's Complaint or Reply.  (Exhibit A – Plaintiff's

Complaint and Reply).   The landlord's claim was limited to the claim that he was owed money

under the personal guarantees.  There was never any claim that Defendant had been operating an

illegal banquet hall.  The introduction of this Jury Charge changed the whole nature of the trial

and greatly prejudiced Defendant.  Brady was not given the opportunity to respond to Plaintiff's

new allegations or present evidence from the DOB that easily proves that the floorplan in

Plaintiff's Memorandum of Law is not one in which "the major period of occupancy, the persons

2

assembled comprise a seated or otherwise passive audience to performance or presentation, and have their attention focused in a common direction or at a common subject," which is the one the judge presented to the Jury.

7.     As the approved Public Assembly permit proves, Defendant was required to show an entirely different floorplan than what is in the glossary in order to have the DOB approve it. In fact, as discussed further below, the approved Public Assembly for F-1b Meeting Halls required tables and chairs to be scattered without a common focal point, and areas for people to congregate and mingle in other parts of the multi-room hall.  Without this floorplan, Defendant would not have been approved for a Public Assembly F-1b "Meeting Hall" use.  Plaintiffs gave the Court false information, and the Court passed this floorplan along to the Jury as law as the only floorplan that would prove Defendant was an illegal Meeting Hall.

8.     Had the motion not been made *ex parte*, Defendant would have advised the Court that the new claim was waived, and would have argued, correctly, that it was up to the Fire Department and the Department of Building to determine if Defendant operated as an illegal "Banquet Hall."  In Defendant's six years of operation, neither the Fire Department nor the Department of Buildings ever asserted that Defendant was operating as an illegal Meeting Hall, so it was certainly not a triable issue six years after Defendant closed his operations.

9.     Had Plaintiff's motion not been *ex parte*, Defendant would have been able to inform the Court that the issue was never raised as an affirmative defense in Plaintiff's Reply to Defendant's Answer and Counterclaims.  Defendant would have been able to explain to the Court that Plaintiff is barred by law of case from raising these new claims and defenses.

10.    The Appellate Division, First Department determined what the issue of the case in their October 11, 2012 Decision, where they state, in closing, "there are issues of fact as to

whether IGS Realty failed to perform its obligation to tenants." (Exhibit B – Appellate Division Decision, October 11, 2012). In the same Decision, the Court also stated: "Furthermore, the proposed fraud claim was sufficiently specific (*see Pludeman v. Northern Leasing, Sys.*, 10 NY 3d 486, 491 [2008])."

11.     Further, in the Justice Madden's Preliminary Conference Order on July 10, 2014, the parties agreed to keep a schedule related to the filing of court papers. (Exhibit C). Pursuant to the PC Order, "Answer with Counterclaims shall be served on or before August 25, 2014." This also proves that Mr. Fass's contention that Defendant's Counterclaims are inadmissible is false. Mr. Fass cannot now assert that Defendant's counterclaims are barred. The Court has already determined they are not. In none of its prior court papers, at no time has Plaintiff ever raised the issue of whether Defendant was operating a meeting hall versus banquet hall.

12.     As the Appellate Division stated: "As a result of tenant's inability to obtain substitute counsel within 13 days of prior counsel being relieved by the court, tenants and Brady, their principal, have been deprived of their day in court in four cases." *Ibid*. In the present case, Defendant had no time at all to respond to Plaintiff's new claims, and was thus entirely robbed of his day in court.

13.     On the first day of the trial, June 23, 2015, prior to selecting a Jury and in order to facilitate a last minute settlement prior to trial, Plaintiff and Defendant agreed that the Court could speak to each side separately only to lay down their evidence so that Court could advise both sides of their respective strengths and weaknesses.

14.     Defendant did exactly what was agreed to during its *ex parte* time with the Court. Defendant's showed the Court Plaintiff's September 27, 2014 Reply in which Plaintiff admitted that Defendant had done their due diligence prior to entering into the leases and guarantees.

Defendant also showed the Court that Plaintiff admitted in their Reply that at that time the leases and guarantee's were signed the building was compliant with fire safety laws and had no illegal office tenants.  Defendants also told the Court that it had Department of Building violation sheets proving the landlord breached the lease and warranty by destroying the building's legal condition after the leases and guarantees were signed by unlawfully turning his factory building into an illegal office building.   Defendant also told the Court that it had DOB objection sheets proving that Plaintiff's unwillingness to stay compliant with fire safety laws caused the Department of Buildings to refuse to issue any more of the TCOs that it needed to operate its meeting hall businesses.  Defendant told the Court that the merger clause of the contract expressly states that the lease and guarantee pertained to the building in its "as is condition" at the time the leases were signed.  The "as is condition" that was breached was the building's "as is" *legal* condition.

15.      Plaintiffs attorney and architect used the time to make new, false, waived, and unsupported accusations and proposed Jury Charges to the Court.   The Court granted Plaintiff's oral motion only minutes before the trial to include a Jury Charge that Defendant was also using his space illegally, and that the Jury should be charged with making a determination on this new allegation.

16.      The new Jury Charge, which had not been part of Plaintiff's case in any manner prior to the *ex parte* motion, added the legal argument that if the Jury determined that Defendant used his meeting hall illegally, then Defendant could not collect even if the Jury found for him on his counterclaims.

**Under the Guise of Presenting Plaintiff's Evidence, Plaintiff's Attorneys Defrauded the Court**

17.      Plaintiffs did not present evidence showing the strengths of Plaintiff's claims but rather introduced new claims and counterclaims.

18.     The Court relied on fraudulent information that it received during its *ex parte* settlement talks with Plaintiff's attorneys and architect on June 23, 2015.  Specifically the Plaintiff's attorney and architect lied to the Court pertaining to the rights given to "Meeting Halls" by the DOB, and the Court then passed along this false information to the Jury and presented a 1968 glossary description of a Meeting Hall, and presented it to the Jury to determine if Defendant was operating as a Meeting Hall or illegal Banquet Halls.

19.     In Plaintiff's last minute, June 26, 2015 Memorandum of Law, they write:

Both Meeting Halls and Banquet Halls fall into Public Assembly Occupancy Group F.  Meeting Halls are in Occupancy group F-1b, Banquet halls are Occupancy Group F-4 (See Building Code References Standards RS-3, Appendix III.)

Section 27-255 of the Building Code of 1968 (Appendix III) states that Occupancy Group F-1:  "**Shall include those buildings and spaces in which, during the major period of occupancy, the persons assembled comprise a seated or otherwise passive audience to performance or presentation, and have their attention focused in a common direction or at a common subject.**"  Occupancy group F-1 consists of two subdivisions F-1a and F-1b."  It is undisputed that the Corporations obtained their construction approvals, Temporary Certificates of Occupancy and Public Assembly Permits under Occupancy F-1b.

20.     The Court relied on these definitions of a Meeting Hall and Banquet Halls without giving Defendant a chance to oppose this, and passed them to the Jury as if they were law.  The Jury Charge included the description provided by Plaintiff as the only lawful way a meeting hall is to be used, and thus that any other room description would actually mean that Defendant was operating a banquet hall.  This was an improper Jury instruction.

**The Court's Erroneous Jury Charge**

21.     Below it is clear that the Court presented to the Jury the same definitions of

Meeting Halls found in Plaintiff's June 25, 2015 Memorandum of Law.  This made Defendant

look like a liar before the Jury:

> Plaintiff's claims that the leases it had with the corporations of the defendant,
> James Brady, required that the use -- the corporation's use and occupy the spaces
> only as meeting halls as defined by the law, but that instead he used them as
> banquet halls.  <u>A meeting hall is defined as a space in which during the major
> period of occupancy the persons assembled comprise a seated or otherwise
> passive audience to a performance or presentation and have their attention
> focused in a common direction at a common subject.</u> A banquet hall is defined as
> a space which during the major period of occupancy, persons assemble for
> dancing or for the consumption of food and drink, or any combination of dancing,
> eating or drinking or entertainment.
>      In order to award Mr. Brady any damages, you must find that during the
> major period of occupancy Mr. Brady's corporations were using the leased
> premises as a meeting hall. The plaintiff seeks to recover damages for breach of
> the three leases.  (Transcript, June 26, 2015, p. 405:2-26 & p. 406:2-14).

**Defendant's Public Assembly Permit Proves the Court's Jury Charge was in Error**

22.     The enclosed approved Public Assembly permit for Defendant's 11th floor at 336

West 37th Street proves the Department of Building permitted totally different room

configurations from those the Court used as part of its Jury Charge.  (Exhibit D – Defendant's

Public Assembly Permit for the Eleventh Floor).  Defendant could not present the accompanying

Public Assembly Permit during trial because obtaining it required going to the Department of

Building's headquarters, researching for it, and then finding it on microfiche.  This was also the

only one of Defendant's Public Assembly permits available at the DOB.  Defendant was told that

someone very recently had pulled the other two Public Assembly permits for Defendant's spaces

at 336 West 37th Street, and never returned them.

23.     The approved Public Assembly plans shows tables for eating and included a 300

sq/ft pantry, clearly marked as "Pantry," which means, as Defendant had stated, that it was used

for reheating food that was prepared elsewhere. The tables are not facing in one direction with a common viewpoint, as the Court's Jury Charge mistakenly stated.

24.     The approved floorplan also shows wide areas left open for socializing and moving. The floorplan is clearly not that of a "passive audience to performance or presentation, and have their attention focused in a common direction or at a common subject." Defendant's permit is clearly labeled "Meeting Hall Use Group CoC Occupancy F-1b, Total Number of Persons: 240." (See center-right of Defendant's floorplan in Exhibit D). The approved floorplan looks remarkably similar to a catering hall, and there are no restrictions that eating and drinking are not permitted. In other words, the permit proves that the definition the Court gave the Jury as law was incorrect, and this would have a direct consequence on the verdict. Based on Plaintiff's definition of "Meeting Hall," Defendant looked like a complete liar. For this reason alone, the verdict should be vacated.

25.     Defendant's due diligence at the time the leases were signed found that the actual permitted configuration and use of a Meeting Hall F-1b was completely different from the 1968 glossary definition that the Court provided to the Jury as law.

26.     The improper Jury instruction made Defendant look like a liar since he was not able to present evidence showing he was fully compliant with actual DOB "Meeting Hall" use.

27.     Defendant, at the time he relieved his attorney, raised the issue that it was not just for the Court to add these new Jury Charges without having the opportunity to reply and defend against the allegations:

> MR. ADINOLFI: Mr. Brady has a motion for the Court, an oral motion for the Court to preclude.
>
> Mr. Brady, if you will proceed.
>
> THE DEFENDANT: Yes.

> They made, they made new charges, your Honor, that my use was actually the one that was not lawful; and it was never raised on any -- it was not raised in the Complaint, it was not raised in the reply. It's never been raised until now, and I'm asking that it be precluded.
>
> THE COURT: That motion is denied.  (Transcript, June 25, 2015, p. 185:17-26)

28.     This is reflected in the Jury's verdict, which did not include a finding of whether Plaintiff had changed the building from its "as is" condition, nor did the Jury find whether Plaintiff increased the risk under the personal guarantees.

29.     The Court told the Jury that the only permitted floorplan under F-1b Meeting Hall under the law was one where "the major period of occupancy, the persons assembled comprise a seated or otherwise passive audience to performance or presentation, and have their attention focused in a common direction or at a common subject."

30.     Due to the Court's erroneous Jury Charge and his inability to correct the record before the Jury, Defendant was agitated in court and inadvertently insulted the Jury.  The inclusion of an erroneous Jury Charge greatly prejudiced Defendant before the Jury.  Defendant now had to prove his innocence rather than have Plaintiff prove his guilt.  The Jury sided with the Judge's instructions as to the lawful description of a Meeting Hall, and then determined Defendant was a liar whose evidence and testimony should be discarded.  This is reflected in the Jury Verdict:

> COURT CLERK: Foreperson, please rise. In regard to question number 1A, do you find in favor of the plaintiff IGS Realty on its claim against the defendant for breach of contract?
>
> JUROR: Yes.
>
> COURT CLERK: Was that unanimous or five to six?
>
> JUROR: Unanimous.

9

COURT CLERK: In regard to question 1B, please state the total dollar amount of damages, if any, that you award to plaintiff for defendant breach of contract?

JUROR: 541,758.62.

COURT CLERK: Was that unanimous or five to six?

JUROR: Unanimous.

COURT CLERK: And in regard to question 2A, do you find in favor of the defendant in connection with his claim that plaintiff breached the implied warranty that the premises were fit for use in the leases?

JUROR: No.

COURT CLERK: Was that unanimous?

JUROR: Yes.

COURT CLERK: And in regard to question 3A, do you find in favor of the defendant on the claim that the plaintiff IGS Really fraudulently induced him to sign the leases and guarantees?

JUROR: No.

COURT CLERK: Was that unanimous?
JUROR: Yes.

COURT CLERK: Thank you. You may be seated. (Transcript, June 26, 2015, p. 437:13-26 & p. 438:2-15).

31.     Clearly the jurors were punishing Defendant because the decision was against the weight of the evidence.  At trial, Plaintiffs themselves repeatedly admitted they unlawfully changed the "as is" legal condition of the building, so clearly as a matter of law, this Court can determine that the Jury's decision was wrong, and in fact Plaintiff breached the contract and warranty.

**The Jury's Decision was Against the Weight of the Evidence, and the Court Should Enter Verdict in Guarantor's Favor**

32.     The Jury did not reach the issue of whether Defendant was operating as a valid Meeting Hall, so the Court must answer this question or vacate the decision.

33.     It was undisputed in the answers that Defendant performed due diligence prior to entering into the leases, and Plaintiff admits that at the time the leases and personal guarantees were signed, the building's fire alarm complied with relevant law and there were no illegal office spaces in the building.  Plaintiff admits repeatedly that they changed the "as is" legal condition of the building by converting the building to illegal offices, and the objection sheets prove conclusively that the Department of Buildings would not issue any more Certificates of Occupancy because the building would not stay compliant with fire safety laws.

34.     Plaintiffs admit that Defendant was not able to get a valid Certificate of Occupancy because of their actions.  Plaintiffs only argument was that defendant could continue to operate without a valid Certificate of Occupancy, which does nothing to mitigate the fact that the "as is" legal condition of the building was unlawfully changed, which breached the contract and warranty, and increased Defendant's risk under the guarantees.

35.     The Court has the power and responsibility to vacate a jury decision when it was wrong and against the weight of the evidence as a matter of law and fact.

36.     A guaranty must be construed "in the strictest manner" (*White Rose Food v. Saleh,* 99 NY2d 589, 591 (2003).  Guarantor cannot be held responsible for the failure of the principal to perform.  An alteration of the contract to which the guaranty applies will serve to discharge the guarantor's obligation unless the guarantor has consented to the alteration. S*ee White Rose Food v Saleh,* 99 NY2d 589 [2003]; *Davimos v Halle,* 35 AD3d 270 [2006.]).  "A guarantee will not be enforced where the modification"... impermissibly increased [guarantor's" risk] without

11

his consent.... *White Rose Food*, 99 NY2d at 591; *Arlona Ltd. Partnership v 8th of Jan. Corp*., 50 AD3d 933, 934 9 (First Dept 2008) (refusing to enforce guarantee of commercial lease where underlying lease was modified).

37.     The first page of the leases state that the purpose of the leasehold was that the demised spaces were to be used as meeting halls.  The First Department has reiterated the longstanding rule that "*[w]hen premises are leased for an expressed purpose, everything necessary to the use and enjoyment of the demised premises for such expressed purpose must be implied where it is not expressed in the lease.*" *Second on Second Café v. Hing Sing TradingCo,* 66 AD 3d 255, 884 NYS 2d 353 (1ˢᵗ Dept 2009).

38.     Applying these principles it is undisputed that the Plaintiff modified the lease and increased defendant's risk when it unlawfully converted the subject premises to an illegal office building.  Paragraph 54 of the Lease Rider specifically states*: Tenant acknowledges that it has inspected the Building and the demised premises, and agrees that Landlord shall not be obligated to make any improvements, or alteration to the demised premises to prepare it for the Tenant's occupancy or otherwise, and that Tenant will accept the demised premises in "as is" condition.*

39.     The objection sheets and the violations prove that the illegal conversion of the subject premises is what caused the New York City Department of Buildings to refuse to renew the tenant/principals temporary certificates of occupancy.  Under the express terms of the lease stated above *"[a] signed writing against whom the party against whom enforcement of the chance, modifications, discharge or abandonment is sought...*" was required. The leases are loft leases and the conversion was clearly a modification.

40.     The objection sheets and violations found in the record clearly show that the subject premises were unlawfully changed from the loft building given upon the execution of the

leases. Furthermore, Plaintiff Philippe Ifrah admits that there were no violations for illegal use until after the last lease was executed in 2003.

41.     In an affidavit filed in a related action *West Side Loft v. IGS Realty* Co., LP., 650463/2009 (the "Affidavit Further Support") Plaintiff Philippe Ifrah stated under oath that the parties agreed to leasing and acceptance of the demised premises "as is" and that Brady performed due diligence, by stating in pertinent part: "*Brady not only admitted to inspecting the premises and acknowledging that the spaces could be transformed into meeting spaces but he personally guaranteed all three leases. In fact, plaintiffs had an experienced engineer and family member also review the leases before they were executed. Brady is a savvy businessman who has entered into many commercial leases and knew exactly what to look for.*"

42.     Brady guaranteed a Loft Lease in a Loft Building that complied with applicable laws and "[i]n short, the deal which the [DEFENDANT] assented was not the agreement to which he is now held." *R&E Property Corp. v. Sky Opticians, Inc. and Levinson*, 2008 Slip Opinion 30454, 2008 NY Misc. LEXIS 7834; citing *Whiterose*. Plaintiff had a duty not to engage in actions which would cause the tenant to lose rights and privileges connected with its use.

43.     Due to the Court's erroneous Jury Charge, this issue never reached the Jury.

## The Court Should Vacate the Verdict and Award of Damages Because it is Against Public Policy

44.     The New York Court of Appeals has held that: "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes." *Carr v. Hoy*, 2 NY 2d 185, 187 (1957).

45.     "It is the settled law of this State (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose." *Stone v. Freeman*, 298 NY 268, 271 (1948).

46.     "Public policy prohibits recovery under a contract where a party engages in fraud or other immoral conduct in tendering its performance under the contract.  As the Court of Appeals stated in *McConnell v. Commonwealth Pictures Corporations*, 7 NY 2d 465 (1960), "long-settled public policy closes the doors of our courts to those who sue to collect the rewards of corruption."

47.     In the present case, there is no dispute that Plaintiff is operating a non-compliant building of illegal office spaces that violates the Special Garment District.  The Plaintiff is a chronic scofflaw

48.     **"When a court is asked to vacate an arbitral award on public policy grounds, "the focus of inquiry is on the result of the award itself."** *Matter of NYS Correctionsl Officers v. State of New York*, 94 NY2d 321, 327 (1999).  "When the final result creates an explicit conflict with other laws and their attendant policy concerns," a court will vacate the award.  *Id*.

### Alternatively, the Court Can Grant a Stay Pursuant to CPLR § 5519

49.     CPLR § 5519 states that :

(c) Stay and limitation of stay by court order.  The court from or to which an appeal is taken or the court of original instance may stay all proceedings to enforce the judgment or order appealed from pending an appeal or determination on a motion for permission to appeal in a case not provided for in subdivision (a) or subdivision (b), or may grant a limited stay or may vacate, limit or modify any stay imposed by subdivision (a), subdivision (b) or this subdivision, except that only the court to which an appeal is taken may vacate, limit or modify a stay imposed by paragraph one of subdivision (a).

14

50.     In considering a stay application, the Court will consider "any relevant factor, including the presumptive merits of the appeal and any exigency or hardship confronting any party.'" *Bread & Butter LLC v. Certain Underwriters at Lloyd's London*, 2009 WL 2984776, 2009 N.Y. Slip Op. 32068(U) (Trial Order)(Sup. Ct., Nassau Cty, 2009); see also Weinstein, Korn & Miller, N.Y. Civil Practice: CPLR ¶5519.13 (2d ed. 2012)(factors considered in exercising judicial discretion to grant a stay include merits of appeal, harm to appellant if stay is denied, and potential prejudice to respondent if stay is granted).  In particular, a court in its discretion may issue a stay due to "[c]onsiderations of judicial economy." *Elie v. City of N.Y.*, 92 A.D. 3d 716, 718 (2d Dep't 2012).

51.     Further, Plaintiffs will not be prejudiced by a stay.  Relative to the prejudice arising from a stay consideration, the Court of Appeals has directly held that "the court entertaining the application is duty-bound to consider the relative hardships that would result from granting (or denying) a stay." *Da Silva v. Musso*, 76 N.Y.2d 436, 443 n.4 (1990), *Da Silva*, 76 N.Y.2d at 443 n.4. *Wilkinson v. Sukiennik*, 120 A.D.2d 989, 989 (4th Dep't 1986); *see also Navy Yard Hous. Dev. Fund, Inc.*, 2002 WL 1174711 (noting that relevant factors to consider in deciding to issue a stay include "the presumptive merits of the appeal,' and holding that "Defendant has failed to establish any grounds to justify a stay pending appeal in this action"); *see also Herbert v. City of N.Y.*, 126 A.D.2d 404, 407 (1st Dep't 1987) (holding that "stays pending appeal will not be  granted, or where the stay is automatic, [or] continued, in cases where the appeal is meritless").

52.     However, while discretion in considering an application for a stay under § 5519(c) may be subjective, it is ultimately subject to the general abuse of discretion standard of review by an appellate court. *See State of N.Y. v. Spodex*, 89 A.D.2d 835, 836 (1st Dep't 1982);

15

*see also In re Foley*, 140 A.D.2d 892, 893 (3d Dep't 1988) (stating "we see no abuse of

discretion here"); *see also Varkonyi v. S.A. Empresa De Viacao Airea Rio*, 22 N.Y.2d 333, 337

(1968); *64 B Venture*, 179 A.D.2d at 375–76 (reviewing the duration of a stay granted by trial

court, the appellate court stated that "it was an improvident exercise of the court's discretion");

*MacLeod v. Shapiro*, 20 A.D.2d 424, 428 (1st Dep't 1964) (noting that, as to duration of a stay,

"[j]udicial power should not be so abused"); *Navy Yard Hous. Dev. Fund, Inc. v. Carr*, 2002 WL

1174711, (Civ. Ct., Kings Co. 2002).

## **CONCLUSION**

53.    Defendant was robbed of his day in court when new triable claims and defenses

were permitted for Plaintiff's benefit.  The new claims and defenses completely changed the

purpose of the trial.  The new claims and defenses enabled the trial to be almost exclusively

focused on attacks on Defendant rather than being a trial as determined by the Appellate

Division, First Department, and Plaintiff's Complaint.  The mistake of considering a 1968

glossary definition of a Meeting Hall as law, and charging the Jury as such, certainly made

Defendant look dishonest and guilty of operating an illegal banquet hall.  The Court as a matter

of law based on the evidence it heard, knows conclusively that the landlord breached the contract

and warranty by not staying compliant with zoning and fire safety laws.  It is undisputed that this

caused Defendant should go to trial without these new, extraneous arguments preventing a fair

day in court, as happened in this case.

DATED:  July 6, 2015
        New York, NY

James Brady, *Pro se* Plaintiff
Studio 450, 12th Floor
450 West 31st Street
New York, NY 10001
bradyny@gmail.com

Sworn before me on this

_____ day of July 2015

Notary Public

State of New York
Notary Public
Scott Kennedy
No. 01KE6180990
Commission Expires January 22, 20__

# EXHIBIT 9

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

**PRESENT:** **BARRY R. OSTRAGER**

*Justice*                                                    **JSC**

PART ___61___

| | |
|---|---|
| Index Number : 603561/2009 | INDEX NO. _____ |
| IGS REALTY CO., L.P. | |
| vs. | MOTION DATE _____ |
| BRADY, JAMES H | MOTION SEQ. NO. __006__ |
| SEQUENCE NUMBER : 006 | |
| VACATE OR MODIFY AWARD | |

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is

*denied in accordance w/ the attached decision*

*Final disposition of case*

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: __8/25/15__                        **BARRY R. OSTRAGER**
                                                              **JSC** J.S.C.

1. CHECK ONE: ....................................... ☒ CASE DISPOSED     ☐ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...................MOTION IS: ☐ GRANTED  ☒ DENIED  ☐ GRANTED IN PART  ☐ OTHER

3. CHECK IF APPROPRIATE: ....................................... ☐ SETTLE ORDER     ☐ SUBMIT ORDER

☐ DO NOT POST     ☐ FIDUCIARY APPOINTMENT     ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------------------X

IGS REALTY CO., L.P., d/b/a IGS REALTY CO.

                                 Plaintiff,

          -against-

JAMES H. BRADY,

                               Defendant.
-----------------------------------------------------------------------------------X

Index No. 603561/09
Motion Seq No. 0006

OSTRAGER, J.:

      Defendant James H. Brady's motion for judgment notwithstanding the judgment

and/or a new trial as well as an application for a stay pursuant to CPLR § 5519.  During

the course of this three-day jury trial, the jury was called upon to resolve a variety of

disputed isuse of fact with respect to plaintiff's claims and defendant's counterclaims.

The jury resolved all of the issues of fact in favor of the plaintiff and against the

defendant.  The cases of *Cohen v. Hallmark Cards*, 45 N.Y.2de 493, 410 N.Y.S.2d 282

(1978) and *Cruz v. Bronx Lebanon Hosp. Ctr.*, 129 A.D.3d 631 (N.Y. 2015) stand for the

proposition that to set aside a jury verdict the movant must demonstrate that "there is

simply no valid line of reasoning and permissible inferences which could possibly lead

rational [people] to the conclusion reached by the jury on the basis of the evidence

presented at trial." *Cohn v. Hallmark Cards*, 45 N.Y.2d 493, 499 (1978).  This is

absolutely not the case here.  There was ample evidence introduced at trial that

supports the jury's verdict.  Moreover, defendant's claim that he was blind-sided by

positions advanced by the plaintiff is without merit.  Both parties litigated the issues

about which the jury heard evidence and both parties addressed those issues in the

testimony that they adduced and addressed those issues in their summations.  The

defendant did not object to the charge as given to the jury. Ironically, the only

objections interposed to the jury charge were made by the plaintiff. There is no basis

for a stay pursuant to CPLR § 5519.

Accordingly, it is hereby

ORDERED that defendant's motion is in all respects denied.

Dated: August 25, 2015

BARRY R. OSTRAGER
J.S.C.

# EXHIBIT 10

May 18, 2018

James H. Brady
510 Sicomac Ave.
Wyckoff, NJ 07481
bradyny@gmail.com
(201) 923-5511

Hon. Peter Tom
Hon. Barbara Kapnick
Hon. Dianne Renwick
Hon. Richard Andrias
Appellate Division, First Judicial Department
Supreme Court of the State of New York
27 Madison Avenue
New York, NY 10010

Re: *IGS Realty Co., LP v. James H. Brady.,* Index No. 603561/2009

Dear Justices of the First Department:

Let me start by saying I am baffled by the decisions of Justices Tom, Kapnick, and Andrias to not recuse themselves for obvious reasons which are known to these judges. It was even more outrageous to have Justice Diane Renwick substitute when she is the last person who should have been brought in given I have sought to have her criminally prosecuted.

Having said that, and having stayed on, I urge you to be just and use your discretion to fix the errors of the lower court and this Court described in this letter, as it is undisputed this Court has the discretion to do.

The video of the May 18, 2018 Oral Arguments shows you are going to try to assert that "at your discretion" you do not need to answer the question of the Merger Clause being broken by the Landlord, and that accordingly I will need to pay the person who admittedly broke the Merger Clause $1.5 million dollars.  You cannot do that for many different reasons.

First, at the May 18, 2018 Oral Arguments, the Court refused to answer to the undisputed fact that the Merger Clause was broken and the Personal Guarantees were voided, even though the Landlord and his attorneys admitted this fact repeatedly to this Court and the lower court.

1

Also, as was admitted by plaintiff's attorney, I did not need to file an appeal of the final judgement in order for this Court to consider the appeal. The arguments for why the Landlord could not collect on the interim and final judgement are identical. The case is not about "the amount" of the interim order or of "the amount" of the final order. The issue is that the Merger Clause was broken and the Personal Guarantees were voided.

Third, the Court's "discretion" to hear this appeal is not based on which party the judges like or don't like. The Court's "discretion" is to be just and fix the many errors of the lower courts and of this Court. In the present case, as had been shown exhaustively, the errors of Judge Ostrager's lower court and this Court are not in dispute.

On five previous occassions, this Court and the lower court have refused to admit or address the fact that as a matter of law the Merger Clause was broken and the Guarantees were voided.

> 1) The issue of the Merger Clause and Personal Guarantee was litigated but ignored by Justice Ostrager at trial, although it was litigated by Defendant and was his material evidence.

> 2) The issue of the Merger Clause and Personal Guarantee was litigated but ignored by Justice Ostrager in my post-trial motion to vacate the verdict and again this piece of material evidence that voided the Guarantees was ignored.

> 3) The issue of the Merger Clause and Personal Guarantee was litigated but ignored by Justice Ostrager in my reargument motion.

> 4) The issue of the Merger Clause and Personal Guarantee was litigated but completely ignored by the Justices of the Appellate Division, First Department in its April 13, 2017 decision.

> 5) The issue of the Merger Clause and Personal Guarantee was litigated but ignored by the Justices of the Appellate Division, First Department in my reargument to this Court.

The Court must use its discretion to address and fix the errors that this Court and the lower court made in five times by ignoring the defense that the Merger Clause was broken and the Personal Guarantees were voided as a matter of law when the Landlord destroyed the good and satisfactory "as is" condition that the building was in at the time the leases and guarantees were signed.

2

Here ar additional reasons the Court must use its discretion to vacate the judgments and issue a new trial on Defendant's claims:

1) Both parties agreed in court documents and during Oral Arguments that the Court can make a determination on this issue of the Personal Guarantee.

2) Both Parties have always agreed that Merger Clause was broken and the Guarantees were voided by the Landlord's unlawful acts. It was an abuse of discretion for this Court to again ignore the central issue of the case.

3) Both parties agree that this Court erred when it reversed the single question on which the judgement was based but did not vacate the judgement.

4) Both parties agree that the jury verdict was based solely on a single, totally false "legal" definition of a meeting hall that was never shared with defendant until the false claim was actually recited to the jury.

5) The single reason why the attorney for the Landlord argues that the court should "use its discretion" not make a determination in this case is totally false.  The Landlord's attorney argues that law of the case precludes the Court from hearing this appeal, but as shown above the issue of the Merge Clause an the Landlord's breach was never adjudicated and must be now.


The Landlord's attorney argues that the issue of the Merger Clause and the Personal Guarantees  has already been litigated and determined numerous times in this Court and the lower court and that "law of the case" prevents this Court from hearing this appeal. He is half right. I have repeatedly litigated in the lower court and this Court the fact that it is undisputed that the Merger Clause was breached and that as a matter of law the the guarantees were voided because the Landlord's unlawful conduct voided the Personal Guarantees when he destroyed the building's Certificate of Occupancy.  But where he is wrong is that he said that there was an adjudication on this issue when unjustly the issue was repeatedly ignored completely by this Court and the lower court.

Mr. Shiendlin argues that I did not appeal the final judgement but admits I did not need to in order for the Court to here the appeal since this defense was the exact same for both.  The appeal was not about the amount or calculation of either judgement but was about the fact that no money was due because the Personal Guarantees were void as a matter of law and public policy.

3

While I did not appeal final judgement, I did at that exact time appeal to this Court in a reargument motion stating all of the errors in this Court's April 13, 2017 decision that mandated correction.  These errors included:

    1) that the Court reversed the jury finding but not the judgement;

    2) that the court was silent in its April 13, 2017 decision on addressing the fact that the Merger Clause was breached and the guarantees voided, although that was my full defense to the judgments and the basis for my counterclaims;

    3) that for the Landlord to collect on the guarantees was against public policy since he is the worst of the worst in violating all zoning laws, building codes, fire safety laws and certificate of occupancy laws;

    4) that there was never any "proposed verdict sheets" presented by Plaintiff for Defendant to argue against;

    5) that the false claim that only one floor plan was permitted "legally" for Meeting Hall use was never said by anyone prior to Judge Ostrager making the false claim to the jury;

    6) this Court was told that a $1.5 million dollar judgment was based solely on this false claim.

This Court "denied" without a word of explanation or justification for failing to address these issues.

I ask this Court to please use its "discretion" to fix these errors. This means this Court must use this *sixth opportunity* to address the fact that the Merger Clause was breached and the Personal Guarantees were voided as a matter of law and public policy.


Sincerely,


_____

James H. Brady

4

# EXHIBIT 11

June 5, 2018

James H. Brady
510 Sicomac Ave.
Wyckoff, NJ 07481
bradyny@gmail.com
(201) 923-5511

Hon. Peter Tom
Hon. Barbara Kapnick
Hon. Dianne Renwick
Hon. Richard Andrias
Appellate Division, First Judicial Department
Supreme Court of the State of New York
27 Madison Avenue
New York, NY 10010

Re: *IGS Realty Co., LP v. James H. Brady.,* Index No. 603561/2009

Dear Justices of the First Department:

This Court needs to read the attached May 31, 2018 letter to Judge Barry Ostrager.
There cannot be discretion when the $1.5 million judgment is based solely on admitted,
incontrovertible false statements to the jury and a complete disregard for the merger
clause of the contract.

The issue of the Judgment has two prongs:

First, the undisputed fact the Judgment was based solely on admitted false statements to
the jury that there was <u>only one</u> "legal" floor plan for meeting hall use pursuant to the
DOB, and that James H. Brady as guarantor is liable if that floor plan was not followed
by the tenant-corporations.

The second prong is addressing that the undisputed fact that the Merger Clause was
broken by the Landlord, and undisputed fact that the Personal Guarantees are voided as
a matter of law and public policy when after the leases were signed he turned the
building into an illegal office building.

There is no discretion to ignore the $1.5 million judgment was based on totally false law
and false jury instructions that were never revealed until these false claims were stated to
the jury.  This Court needs to address this immediately.  Judicial discretion is for the

1

purpose of justice, and it was certainly not just for my defense of breach of contract to be ignored over half a dozen times.

The transcript of the May 16, 2018 Oral Arguments shows this Court refused to answer whether the Merger Clause to the contract was breached by the Landlord even though the parties to the contract have always agreed it was.

The May 16, 2018 Oral Argument transcript shows this court sat silent and refused to address the undisputed fact that the verdict and judgment was based on the totally false claim that under the law, only one floor plan was permitted for Meeting Hall use or James Brady personally owed what is now a $1.5 million dollar judgment.

The enclosed letter to Judge Ostrager has also been sent to 7 different city, state and federal law enforcement agencies. I truly hope this Court will do the right thing, which mandates a new trial for my claims and a declaration that the Personal Guarantees are void.


Sincerely,



_____

James H. Brady

# EXHIBIT 12

| IGS Realty Co., L.P. v Brady |
|:---:|
| 2018 NY Slip Op 04086 |
| Decided on June 7, 2018 |
| Appellate Division, First Department |
| Published by <u>New York State Law Reporting Bureau</u> pursuant to Judiciary Law § 431. |
| This opinion is uncorrected and subject to revision before publication in the Official Reports. |

Decided on June 7, 2018
Tom, J.P., Andrias, Kapnick, Webber, JJ.

603561/09 6800 6799

**[\*1]IGS Realty Co., L.P., Plaintiff-Respondent,**

**v**

**James H. Brady, Defendant-Appellant.**

James H. Brady, appellant pro se.

Law Office of Gregory Sheindlin, PLLC, New York (Gregory Sheindlin of counsel), for respondent.

Appeal from order, Supreme Court, New York County (Barry R. Ostrager, J.), entered April 10, 2017, deemed an appeal from judgment (CPLR 5520[c]), same court and Justice, entered May 31, 2017, in favor of plaintiff, and as so considered, said judgment unanimously affirmed, without costs. Appeal from order, same court and Justice, entered February 17, 2017, unanimously dismissed, without costs, as abandoned.

Pro se defendant's arguments on this appeal, previously raised and rejected by this Court and supported by no new evidence or change of law, are barred by law of the case (*see Delgado v City of New York*, 144 AD3d 46, 51 [1st Dept 2016]; *Carmona v Mathisson*, 92 AD3d 492, 492-493 [1st Dept 2012]).

We have considered defendant's remaining contentions and find them unavailing.

THIS CONSTITUTES THE DECISION AND ORDER

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: JUNE 7, 2018

CLERK

Return to Decision List

# EXHIBIT 13

FILED: NEW YORK COUNTY CLERK 07/31/2015 11:22 AM

NYSCEF DOC. NO. 244

RECEIVED NYSCEF: 07/31/2015

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X

IGS REALTY CO. LP d/b/a IGS REALTY, CO,

                     Plaintiff,

        -against-                          Index No. 603561/09

JAMES H. BRADY,

                     Defendant.
-------------------------------------------------------------X

OSTRAGER, J.

## JURY INTERROGATORIES

**At least five (5) jurors must agree on the answer to each question.**

1(a).   Do you find in favor of the plaintiff IGS Realty on its claim against the defendant for breach of contract?

       ✓
      yes                         no

*Felix Soto*                 *Jonathan Hannin*
*Diane Drey*
*Orlando Battle*             *marilyn*

**If your answer to question 1(a) is "YES", please proceed to question 1(b). If your answer to question 1(a) is "NO", please proceed to question 2(a).**

1(b).   Please state the total dollar amount of damages, if any, that you award to plaintiff for defendant's breach of contract.

                    $ 541,758.62

*Felix Soto*                 *Jonathan Hannin*
*Diane Drey*
*Orlando Battle*             *marilyn*

**Please proceed to question 2(a).**

COURT'S
EXHIBIT NO. 1
IDENTIFICATION/EVIDENCE
DKT.#
DATE: 6/5/15 OT

2(a).   Do you find in favor of the defendant in connection with his claim that plaintiff breached the implied warranty that the premises were fit for the use stated in the leases?

_____   yes          _____ ✓ no

If your answer to question 2(a) is "YES", please proceed to question 2(b).  If your answer to question 2(a) is "NO", please proceed to question 3.

2(b).   Please state the total dollar amount of damages, if any, that you award to defendant for plaintiff's breach of the implied warranty that the premises were fit for the use stated in the leases.

$ _____ *None* _____

Please proceed to question 3(a).

3(a).   Do you find in favor of the defendant on the claim that plaintiff IGS Realty fraudulently induced him to sign the leases and guarantees?

_____   yes          _____ ✓ no

If your answer to question 3(a) is "YES", please proceed to question 3(b).  If your answer to question 3(a) is "NO", please stop here and report your findings to the Court.

2

3(b).    Please state the total dollar amount of damages, if any, that you award to defendant based on his claim of fraud by IGS.

$ _None_

**PLEASE REPORT YOUR FINDINGS TO THE COURT.**

3

# EXHIBIT 14

March 23, 2018

Mr. James Brady
450 West 31st Street, 12st Floor
New York, NY 10001
(201) 923-5511
bradyny@gmail.com

State of New York Court of Appeals
Clerk of the Court
20 Eagle Street
Albany, NY 12207

Re:  *IGS Realty Co., LP v. James H. Brady., Index No. 603561/2009*

Dear Clerk of the Court:

It is vital the judges of the Court of Appeals see this original documentary evidence in the above case.  This is not new evidence.  It is the *original* architect's floorplan which shows that the jury charge in this case was factually incorrect.

A scanned, pdf-sized version of this floorplan has already been submitted as part of the Record in this appeal, but the original 2' x 3' feet floorplan, which was seen by the Department of Buildings, the NYPD and the Fire Department each time they walked into one of my event spaces to perform inspections, should be included in this case as it is an original piece of documentary evidence that cannot be ignored as it has been repeatedly by Judge Ostrager and the Appellate Division Justices.

I have a $1.5 million judgment against me which stems exclusively from an a jury verdict based on the following incorrect jury charge by Judge Ostrager:

> Plaintiff's claims that the leases it had with the corporations of the defendant, James Brady, required that the use -- the corporation's use and occupy the spaces only as meeting halls as defined by the law, but that instead he used them as banquet halls.  **A meeting hall** is defined as a space in which during the major period of occupancy the persons assembled comprise a seated or otherwise passive audience to a performance or presentation and have their attention focused in a common direction at a common subject.

1

**A banquet hall** is defined as a space which during the major period of occupancy, persons assemble for dancing or for the consumption of food and drink, or any combination of <u>dancing, eating or drinking or entertainment</u>.

The floorplan proves Judge Ostrager's jury charge was completely wrong. The Public Assembly permit for Defendant's 11th floor at 336 West 37th Street proves the Department of Building permitted totally different room configurations from those the Court used as part of its Jury Charge. The permit is clearly labeled "Meeting Hall Use Group CoC Occupancy F-1b, Total Number of Persons: 240."

The Department of Buildings will not approve a Public Assembly Permit for a non-compliant floorplan. Only the DOB can determine whether a floor configuration is compliant, not a jury, and the DOB approved this floorplan as a "meeting hall."

I presented Judge Ostrager with a pdf version of this floorplan within the time-period that was allotted after trial, but he ignored it and dismissed my motion. I again presented him with it in my motion to reargue, and then twice at the fee hearings.

The record shows that during an *ex parte* communication hours before the jury trial started, it was agreed between the Landlord and the Landlord's architect and lawyer that if I did not accept the Landlords $50,000 offer to settle, Judge Ostrager would make a completely false claim during his Jury Charges, namely, that UNDER THE LAW, there was only one permitted way that a meeting hall could be used.

The Landlord's Trial Memorandum shows that Mr. Fass did not submit any proposed jury charges, which means that the "law" given the jury came from the Court, or in consultation with Plaintiff, but that it was not and had never been part of this case. Mr. Fass introduced the issue for the first time in his opening arguments:

> "Ifrah (the landlord) will show you that Mr. Brady's use was not permitted under applicable zoning building code requirements. In particular, although he claims to be running what is called a meeting hall --and the Judge will charge you what that means--he was in fact an entirely different use known as a banquet hall, which wasn't allowed in the district. And he did it from day one." (Transcript, June 23, 2015, p. 12). (R.989).

This suggests that during the *ex parte* meeting, Plaintiff's gave the Court something and presented it as the meaning of the term "Meeting Hall." Defendant was not there to see or oppose what was given to the Court. But the Judge did warn me that I should take the

2

$50,000 offer or I would be sorry, another New York judge asking that I take pennies on the dollar after I spent $750,000 renovating the spaces.

The Record shows that Judge Ostrager proceeded to say to the jury that "if the persons assembled comprise a seated or otherwise passive audience to a performance or presentation and have their attention focused in a common direction at a common subject," that means that Brady as Personal Guarantor was in breach of the leases and needed to pay the amount the Landlord claimed due on the Personal Guarantees. In other words, the seating arrangements of the corporate tenant determined whether I was liable for $1.5 million. That was a directed verdict against Brady.

Judge Ostrager also asserted that if Brady did not follow that floorplan with guests all seated in one direction passively, then Brady would have no causes of action for fraud in the inducement because you cannot be fraudulently induced into entering an illegal use contract. That was another directed verdict against Brady.

Judge Ostrager and the Appellate Division Justices completely ignored the fact that the claims were untrue, were never said by anyone at trial, were not ever claimed by anyone ever, and were never supposed to be triable issues since it was a Personal Guarantee issue only by Plaintiff IGS Realty .

In conclusion, the Justices of the Court of Appeals should see the original architect's floorplan in order to properly adjudicate this case and reverse the jury charge and Judge Ostrager's factually incorrect statements of law and fact.

Please make sure that this piece of original evidence is sent back to me at the address above.


Sincerely,



James Brady

3

# EXHIBIT 15

 Gmail

Jim Brady <bradyny@gmail.com>

# IGS REALTY CO., L.P. d/b/a IGS REALTY CO. vs JAMES H BRADY 603561/2009

**Patricia L Della Peruta** <plperuta@nycourts.gov>                    Fri, Mar 30, 2018 at 1:10 PM
To: "bradyny@gmail.com" <bradyny@gmail.com>
Cc: Alexander Giuffre <agiuffre@nycourts.gov>

Mr. Brady,

The FedEx package you sent to Justice Ostrager arrived today. Please retrieve it from the Part Clerk at your earliest convenience. Please note, Justice Ostrager's courtroom is Room 232 at 60 Centre Street (not 341). Thank you.

———————————————————

Patty Della Peruta

Secretary to Justice Barry R Ostrager

Supreme Court, New York County

60 Centre Street, Room 624

New York, NY 10007

Tel: 646 386-4150

Fax: 212 618-5291

plperuta@nycourts.gov

**Jim Brady** <bradyny@gmail.com>                    Fri, Mar 30, 2018 at 1:28 PM
To: Patricia L Della Peruta <plperuta@nycourts.gov>
Cc: Alexander Giuffre <agiuffre@nycourts.gov>

Dear. Ms Della Peruta

I can pick up the package on Monday. Please confirm the room number and who I should ask for..

You make no mention of whether judge Ostrager will be contacting the Court of Appeals as requested in the letter?

wrong

Thank You

James H Brady
[Quoted text hidden]

---

**Patricia L Della Peruta** <plperuta@nycourts.gov>                      Fri, Mar 30, 2018 at 1:40 PM
To: Jim Brady <bradyny@gmail.com>
Cc: Alexander Giuffre <agiuffre@nycourts.gov>

Mr. Brady,

You may pick up the package on Monday.  Go to Room 232 and ask the Clerk for the package.  Unfortunately Alex Giuffre will
be out on Monday and I do not have the name of his replacement at this time.  If you have any difficulty, please call me at 646-
386-4150 and I will assist.


The Court reviewed your letter. There is no procedure for the Judge to contact the Court of Appeals.

[Quoted text hidden]

---

**Jim Brady** <bradyny@gmail.com>                      Fri, Mar 30, 2018 at 2:40 PM
To: Patricia L Della Peruta <plperuta@nycourts.gov>
Cc: Alexander Giuffre <agiuffre@nycourts.gov>

Ms. Della Peeuta
The architectural plans that were approved by the Department of Buildings proves conclusively what Judge Ostrager
said was the only  floor plan permitted under the law for meeting hall use was totally false.
Judge Ostrager must show where he found that statement as law or help fix the mistake
It's one or the other
Please tell him I need him to help fix his mistake which  resulted in a 1.5 million dollar judgement against me
Thank you
James Brady

# EXHIBIT 16

April 18, 2018
James H. Brady
450 West 31st Street
12th Floor
New York, NY 10001

bradyny@gmail.com

Justice Barry Ostrager
60 Centre Street
Room 341
New York, NY 10013

Re: *IGS Realty Co., LP v. James H. Brady.,* Index No. 603561/2009

Dear Justice Ostrager:

I am writing following-up to see is you contacted the Court of Appeals in reference to the fatal mistakes this Court made while presiding over this case.

I provided you with the original architectural plans that were approved by the New York State Department of Buildings that proved your claim that "under the law" only one floor-plan configuration was permitted by the DOB was completely wrong. In my prior letter, I asked that you fix the mistake, or explain where you found the case law. As you cannot provide the case law, I again am asking that you fix your mistake. I am unwilling to permit you to do nothing while your untrue jury charge expressly caused a $1.5 million dollar judgement against me.

Since the time of my last letter to you, I have found more proof of some of the other fatal mistakes that you made which mandate that you contact the Court of Appeals and admit your mistakes and the need for a new trial.

For example, the jury instruction that if a particular floor-plan was not followed by the tenant-corporations, that meant James H. Brady was in breach of contract and was liable to the Landlord. As the attached April 5, 2018 decision from the Appellate Division, First Department proves, James H. Brady could not have broken the contract since James H. Brady was not a party to the contract or a tenant of IGS Realty.

In its April 5, 2018 decision in *Veneto Hotel & Casino, S.A. v. German-American Capital Corporation*, Index No. 651888/2015 (2018). The Appellate Division, First Department upheld dismissal of breach of contract claims because the party plaintiff asserted had breached the contract was not a party to the contract:

> With respect to the breach of contract and breach of the implied covenant claims
> asserted by plaintiff SE Leisure Management LLC, these were also properly
> dismissed. Defendant was not a party to the agreements sued upon, and plaintiffs are

There is currently a $1.5 million dollar judgement against James H. Brady for breach of contract that was never a claim made by IGS Realty. This Court made up the Breach of Contract claim against James H. Brady that was unlawful to charge him with since James H. Brady was not a party to the contract. This Court must address this error with the Court of Appeals immediately .

I have learned of more case law proving the inexperience of this Court cause me great harm. For example

First  this court ignored my counter claims completely and substituted a counterclaim with its own charge that the court know would then be set up and reversed against me on appeal.
p. 40 of part 4 transcript

Under the law, a violation of a
Although the tenant and his Landlord admitted the distraction of the buildings Certificate of Occupancy, this court ignored my negligence and gross negligence claims. As a matte of law you had no authority to to do that since as a matte of law of violations mean a degree of negligence

Finally my claim was that the landlord broke the merger clause of the lease and thus broke the contract since the as is condition was destroyed after the leases and guarantees were signed. You should have left the charge as presented but instead the Court, again on its own changed the charge to a change of ' implied warranty  of inhabitability " That is a charge that is not permitted in corporate  leases, as you know. So this that charge it was set up to be reversed if the jury found in my favor

As a matter of law Certificate of Occupancy violations are evidence of a degree ' of negligence" yet the court permitted the landlords attorney to say over 10 times that no one follows the law and that " having a Cof O or not having a certificate of occuapncy makes no difference

Another fatal mistake in the jury charges that you created was your instruction that if a particular flor plan was not followed then that meant James H Brady  was in breach of contract and owed the landlord the money he claimed do. As the attacked decision from the Appellate Division First Department proves James H Brady could not have broken the contract since James H Brady was not a party to the contract or a tenant of IGS Realty. Currently there is a 1.5 million dollar judgement against James H Brady for breach of contract that was never a claim made by IGS Realty. This Court made up the Breach of Contract claim against James H Brady that was unlawful to charge him with since James H Brady was not a party to the contract. This court must address this error with the Court of

Thank you,

_____

James Brady, *Pro se* Plaintiff
450 West 31st Street
12th Floor
New York, NY 10001
(201) 923-5511

1

# EXHIBIT 17

May 14, 2018

James H. Brady
450 West 31st Street
12th Floor
New York, NY 10001
bradyny@gmail.com

Justice Barry Ostrager
60 Centre Street
Room 341
New York, NY 10013

Re: *IGS Realty Co., LP v. James H. Brady.,* Index No. 603561/2009

Dear Justice Ostrager:

I will be before the Appellate Division, First Department on Wednesday, May 16, 2018, in the related Article 52 proceeding, *IGS Realty Co., LP v. James H. Brady.,* Index No. 159554/2017 in which the Landlord is attempting to force a sale of the business which is my only source of income in order to collect the $1.5 million dollar judgment handed down by this Court.

You need file a letter in the Unified Court System addressed to the Appellate Division by the end of day on Tuesday, May 15, 2018 stating that your jury instruction was wrong, that the judgment is void, and that a new trial is needed.

This Court's jury charge was that if a particular floor-plan was not followed by the tenant-corporations, that meant James H. Brady was himself in breach of contract and therefore was liable to the Landlord.

The Jury Charge was shown to be false within the time period given by this Court to file post-trial motions. In a subsequent letter on March 2018, I provided you with the original architectural plans that were approved by the New York State Department of Buildings that proved your claim that "under the law" only one floor-plan configuration was permitted by the DOB was completely wrong.

In my prior letter, I asked that you fix the mistake, or explain where you found the case law. The Court has so far refused to correct its mistake. When asked if the Court still held the same opinion regarding the Jury Charge, you first said yes and then dismissed my question by saying you did not need to answer.

1

This Court knows that as a matter of law, a person or entity that was not a party to a contract could not have broken the contract. In this case, the verdict and judgment were based on a breach of contract by a party that was never a party to the contract.

The issue of whether the corporate-tenants had broken the leases was only the first finding required to hold that James H. Brady, the personal guarantor, was liable to the Landlord.

James H. Brady could not have broken the lease agreement because James H. Brady was not the lessee nor the tenant. The Court skipped over this entire analysis and asserted that if the corporate tenants did not have all guests seated in one direction passively, then I as Personal Guarantor had no counterclaims for fraud in the inducement because you cannot be fraudulently induced into entering an illegal use contract.

The Jury's verdict proves that the jury was asked to determine whether James H. Brady broke the leases, not whether the tenant-corporations had broken the leases:

> COURT CLERK: In regard to question 1B, please state the total dollar amount of damages, if any, that you award to plaintiff for defendant breach of contract?
>
> JUROR: $541,758.62.

The Plaintiff never submitted any jury instructions.  This Court came up with the Jury Charge itself as part of a road-map to a directive verdict against me after I refused to accept the Landlord's $50,000 offer to settle.  The Landlord is now attempting to force a sale of my business in order to collect on what has been shown conclusively to be a false Jury Charge that misstated New York Law.

This should have been corrected through my post-trial motion.  This Court now needs to communicate its error to the Appellate Division, First Department by the end of day tomorrow, May 15, 2018, to prevent a great injustice for which this Court is responsible.

Thank you,


_____/s/_____

James Brady, *Pro se* Plaintiff

2

# EXHIBIT 18

May 31, 2018

James H. Brady
450 West 31st Street
12th Floor
New York, NY 10001
bradyny@gmail.com

Justice Barry Ostrager
60 Centre Street
Room 341
New York, NY 10013

Re: *IGS Realty Co., LP v. James H. Brady.*, Index No. 603561/2009

Dear Justice Ostrager:

You have ignored my repeated pleads for your help in fixing the consequences of the totally false jury charge that you gave on June 26, 2015 that resulted in what is now a $1.5 million dollar judgment against me. You completely ignored fixing your mistake and did not dispute that you knew you were lying when you told the jury that the only "legal" floor plan for a meeting hall "is defined as a space in which during the major period of occupancy the persons assembled comprise a seated or otherwise passive audience to a performance or presentation and have their attention focused in a common direction at a common subject," otherwise personal guarantor James Brady (who was not even a tenant or a party to the contract personally) broke the contract and owed the Landlord what is now a $1.5 million dollar judgment.

My most recent letters from March 28, 2018 and May 14, 2018 demanded that you fix the consequences of your false Jury charge or show me the law that you relied on in making this false claim to the Jury that under the law the only floor plan permitted "is defined as a space in which during the major period of occupancy the persons assembled comprise a seated or otherwise passive audience to a performance or presentation and and have their attention focused in a common direction at a common subject".

Specifically, on page 2 of my March 28, 2018 letter I wrote the following:

"Your honor cannot sit by and allow this injustice. This Court must write the Court of Appeals and explain that you made an error at trial and the corresponding judgment must be set aside. Otherwise, the Court must show where the law states that a Meeting

1

<u>Hall must have all guests facing one direction like a theater, and that a Personal Guarantor has to pay if that floor plan is not followed by the corporate tenant."</u>

You refused to do either, although you knew your claim was totally false and resulted in a $1.5 million dollar judgment based solely on your lie.

You made up this totally false Jury charge and would not fix it because it was this criminal act that got you immediately promoted to a Commercial Division Judge. You were rewarded for doing the bidding of Commercial Division Judge Marcy Friedman and Commercial Division Judge Shirley Kornreich and the other corrupt judges that I have exposed on my website bullyjudges.com, and whom I have repeatedly pressed to have removed and prosecuted.

Your jury charge was absolutely retaliatory and made up solely by you. The landlord and his attorney made up the claim that my corporate tenants were actually illegal banquet halls <u>only</u> to get out of paying me any judgment the jury might award me. It was you alone that make up the false claim that if my corporate tenants did not follow a particulate floor plan them I owed the landlord what is now a $1.5 million dollar judgment.

Here are other facts about you that warrant a criminal probe:

1) You were never elected to be a New York Supreme Court Judge.

2) You were appointed to be a Court of Claims Judge by Governor Andrew Cuomo in June 2015. At that time I was suing Andrew Cuomo for his part in a criminal scheme to have my February 11, 2010 Appellate Division Decision replaced with Supreme Court Commercial Division Judge Shirley Kornreich's July 15, 2014 decision.  In the lower court Judge Kornreich replaced the 40 words that were in my Offering Plan Contract with 70 different words that voided the $70-90 million in development rights which both of these documents said I had. To boot, she has issued $470,000 in sanctions against me, as you know.

Governor Cuomo was able to get you a judicial job under the guise that you were going to be a Court of Claims Judge, yet you never actually worked as a Court of Claims Judge.

Instead you mysteriously and immediately took over the case of *IGS Realty vs. James H Brady*, which was before Justice Joan Madden since 2009.

2

Why was the case taken over by you in June 2015? Who's idea was that, and how did it take place? Who authorized the case to be moved from Justice Joan Madden to you in June 2015? You were only authorized as a brand new judge to hear cases below $500,000 but this case was much higher since my counter claims were in the millions of dollars. Why did you not follow that requirement?

It is undisputed by you and the record proves that the first day of trial was to begin on June 23, 2015, where you had an ex-party communication with the landlord Philippe Ifrah, his architect and Attorney Robert Fass. It is undisputed, and the record proves that during that *ex partie* communication the four of you created a scheme, where if I did not accept the landlord's $50,000 offer to settle, you would tell the jury the false claim that a Meeting Hall is "legally" defined only as a "legal" floor plan, for a meeting hall "is defined as a space in which during the major period of occupancy the persons assembled comprise a seated or otherwise passive audience to a performance or presentation and have their attention focused in a common direction at a common subject"; otherwise personal guarantor James Brady (who was not a party to the contract) broke the contract and needed to pay the judgment.

You do not dispute that you knew the claim was totally false when you made the claim to the jury. Why did you knowingly make this false and foolish claim? It was because making this false claim to the jury and getting a $1.5 million dollar judgment against me that lead to your immediate promotion to the prestigious and powerful Commercial Division, in your first month on the job.

And when shown evidence that the claim was totally false you ignored it, and stated that the verdict "was not against the weight of the evidence" and that "I did not object to the jury charge." You knew both claims were totally false.

First, the jury verdict and judgment was based only on the false roadmap you had given them, and the false "law" that was never stated until you spit out the crazy and false words to the jury.

Second, the landlord did not provide any jury charges to object, as you are fully aware, because a key to your colluded scheme was secrecy. The jury charges were made up by you and were a roadmap that could only lead to jury decisions against me. Although his actions were clearly negligent and grossly negligence, you discarded these counterclaims.

The jury charges that you never revealed and made up on your own, stated that if my corporations did not have a particular theater style floor plan with patrons passively

3

facing in a particular direction, then that meant that James H. Brady broke the contract and the jury needed to award the landlord what is now a 1.5 million dollar judgment.

You also stated that if this floor plan was not followed then there could be no fraud in the inducement. That's why they had to say no to your second question.

Your third and final question was for the jury to determine if there was a breach of implied warrant of habitability which they said no, since you let them believe that having a certificate of occupancy or not having a certificate of occupancy "made no difference."

Furthermore, I never claimed breach of implied warranty of habitability in my complaint because there is no such thing as an implied warranty of habitability in a commercial lease.  So even if the jury said yes there was breach of implied warranty: that third question would have been reversed on appeal since there is no such thing as an implied warranty of inhabitability in a commercial lease. You didn't know this fact, yet you were immediately promoted to the Commercial Division as a result of the outcome of this trial?

What you did to me at that trial and how you had taken over the case was immediately very suspicious to me:

The first thing you were shown in the hours before the trial when you were evaluating strengths and weaknesses from both sides was the "merger clause" of the contract and the admissions from the landlord's attorney in his answers that the merger clause was broken, when the landlord destroyed the buildings Good and Satisfactory "As is Condition" when he unlawfully tuned the building into an illegal office building and did not stay compliment with zoning laws after the leases were signed.

You became the first person ever to argue that the merger "as is condition" clause only pertained to the physical condition and not the "legal condition" of the building. This was particularly suspicious, since the parties to the contract and our attorneys both agree the "as is condition clause" pretend to the physical and legal condition of the building.

You knew that the "as is condition" clause of a merger clause commercial lease pertains to its physical and legal condition of the building at the time due diligence is performed. If not, how did you qualify to become a Commercial Division Judge not knowing this very basic fact?

4

You knew the breach of the "as is condition" of the merger clause was my iron clad defense to the Personal Guarantees, which is why you refused to address this defense and therefore argued that the merger clause does not mean what it say on its face and what the parties to the contract agree it means.

You sat behind the bench and heard the landlord's attorney admit twice at trial that my due diligence pertained to the physical <u>and</u> legal condition of the building, yet you completely ignored this full defense that voided the guarantees since the unlawful acts were done without my written consent.

The landlord and his attorney's whole last minute made up story that I was the one operating illegally was only intended so I could not collect against the landlord. The intent of the story was not so that they could collect against me.

Yet you had taken it much further then that. You said in the jury charges that you created that if my corporations did not follow a particular floor plan, then James H. Brady broke the contract and owed what is now $1.5 million dollars. You were promoted immediately to the Commercial Division as a reward for this shameful and corrupt conduct against me.

You made up these false jury instructions so that they could only find against me and award this huge judgment, whose unlawful acts admittedly destroyed my business.

The record shows that when you were not lying to the jury, you permitted Mr. Fass to lie to them over ten times stating that "having a Certificate of Occupancy or not having a Certificate of Occupancy makes no difference" and that "no one follows the law".

How does this conduct and competence level promote you immediately to the Commercial Division?

In truth, you were planted as someone to take over my case in another retaliation scheme made against me by the New York State Judiciary. You were rewarded for destroying my trial against the landlord and sticking me with a huge $1.5 million dollar judgment, based on nothing more then your false claim that if my corporations did not follow a particular floor plan and patrons did not sit in a particular passive way, then James H. Brady had broken the contract and owed the judgment.

In the record it is shown that you claimed to the jury that the landlord made this claim but there is no truth to this. The landlord never stated what you said to the jury. The

5

landlord and his attorney only admitted to the landlord's own wrongs while asserting that it was no big deal, since "no one followed the law".

A review of the transcript proves that you repeatedly stated to the jury that they could not award any money to me if they found I had broken the law, but you never had provided them the other side of that argument. You never said that if the landlord engaged in unlawful acts then they could not award him any money.

A review of the record also shows that you repeatedly were yelling at me and making the landlord out to be the victim.

The record proves that the landlord admittedly broke the law and destroyed the Building Certificate Occupancy and the Temporary Certificate of Occupancy I needed for my meeting hall businesses, yet you would not give the jury my negligence or gross negligence claims.

You knew that I, James H. Brady, could not have broken the contract since my name was not on the contracts personally. The jury could only have ruled against the corporate tenants. You knew that a guarantor's defense is totally separate but ignored this fact completely. You ignored that as a matter of law and public policy, the guarantees were voided but completely ignored these defense.

You were rewarded for all these retaliatory acts with an immediate promotion to the Commercial Division of the Manhattan Supreme Court.  Records from a New York Law Journal article indicates that you were not even supposed to preside over cases above $500,000 in June 2015 because you were a brand new judge.

The only explanation for your conduct at the trial and refusal to fix the false jury charge that lead to a $1.5 million dollar judgment against me is the fact that it was getting this cruel, unjust decision against me got you promoted to a Commercial Division Judge. There are no other explanation exists for your actions, and if there is then explain it by June 7, 2018 in a letter that I can share with the law enforcement agencies investigating this matter.

Sincerely,


_____/s/_____
James H. Brady

6

# EXHIBIT 19

August 27, 2018

James H. Brady
450 West 31st Street
12th Floor
New York, NY 10001
bradyny@gmail.com

Justice Barry Ostrager
60 Centre Street
Room 341
New York, NY 10013

Re: *IGS Realty Co., LP v. James H. Brady.*, Index No. 603561/2009

Dear Justice Ostrager:

I have a matter that needs your immediate attention. As you know, you presided over the case of *IGS Realty Co., LP v. James H. Brady.* As you also know, you were silent and never applied the law that voids personal guarantees to the facts in this case. I need you to do so, right now. You know that as a matter of law and public policy, the personal guarantees were voided by the landlord's repeatedly admitted illegal actions after the personal guarantees were signed.

Thus far, neither you nor the justices of the Appellate Division First Department ever addressed the issue of the personal guarantees. In fact, the issue was completely avoided because addressing it would void the personal guarantees. This is part of the retaliation scheme which I will make sure is prosecuted, if not, fixed. On September 5, 2018, I will be forced to pay over $1.7 million dollars because you and the Appellate Division Justices have refused to apply the law and public policy to the admitted facts that void personal guarantees.

You can prevent this scandal from growing and this crime from being committed by contacting the Court of Appeals today, and telling them that of your personal knowledge when the law is applied to the admitted facts, the personal guarantees are void as a matter of law and public policy.

To refresh in your memory, the law states the following voids personal guarantees:

> "A guaranty must be construed 'in the strictest manner' (White Rose Food v. Saleh, 99 NY2d
> 589, 591 (2003). Guarantor cannot be held responsible for the failure of the principal to

1

perform.  An alteration of the contract to which the guaranty applies will serve to discharge the guarantor's obligation unless the guarantor has consented to the alteration. See White Rose Food v Saleh, 99 NY2d 589 [2003]; Davimos v Halle, 35 AD3d 270 [2006.])."

"There can be no doubt that a guarantor, when sued alone by the creditor, can successfully resist by showing that the creditor, on his part, totally failed to perform his obligations to the principal.  In other words, the guarantor may always assert a total failure of consideration. This is because the guarantor is not liable unless the principal is bound (4 Williston Contracts (rev.ed) 1213)."

Mr. Fass' June 25, 2015 closing arguments included the following admissions of what the Landlord did after the leases were signed:

> "So let's being at the beginning.  In 2001 Mr. Ifrah placed an ad in the New York Times. He (Brady) goes to the space, checks it out, and puts a deposit down a check on one of the spaces.  Then speaks with his father who has great experience in real estate who tells him this is in the special garment district for zoning, so he better check out whether his use is permitted.

> So he puts a stop on the check and tells Mr. Ifrah he wants to do his due diligence, which he does.  And he checks the whole building from top to bottom, legal and physical conditions, and concludes that everything is fine.  The building's legal, the physical conditions are legal, and everything else is in good and satisfactory condition.  So then he writes another check and rents the space.  After that in the same year and the following year he rents two other spaces" (R. 882).

> He also gets permits to construct meeting halls representing to the Building Department it's on the section that covers meeting halls, section of the regulation.  And he gets public assembly permits also for meeting hall use.  The last certificate of occupancy that he got expired in 2007."

> "There is no doubt at the time after the leases were signed Mr. Ifrah started renting space and he had to pay a lot of finds to do it." (R. 888-889)
> "Mr. Ifrah had to pay hundreds and later thousands of dollars in fines as the fines accumulated over time for the office space." (R. 885)

> "So after 2007 he didn't have the certificate of occupancy of any sort." (R. 884)

As you know, violation sheets from the department of buildings proved to you that the landlord broke the lease and voided the personal guarantees through his unlawful conduct, which he pleaded guilty to repeatedly in court.

The personal guarantee issued is currently before the Court of Appeals, and you must contact them immediately and inform them of your first hand knowledge that it was

2

admitted to that the contract on which the personal guarantees applied were voided by the landlords subsequent unlawful conduct.

You also know that the exhibits provided at trial prove the Department of Buildings fined the landlord for altering his building from the good and satisfactory "as is" condition it was in at the time the leases and personal guarantees were signed into an illegal office building.  You also know that he pleaded guilty to these illegal changes, each and every time a violation was issued.

Your own admissions at trial prove that the Landlord broke the Leases and warranty, and therein voided the Personal Guarantees.

> THE COURT:  We don't need this testimony, Mr. Brady.  You've introduced a document indicating that there was one violation on the building at the time that you signed the lease.  We don't need to – (R. 790).

> THE COURT:  Objection sustained.  Mr. Brady, this is getting repetitive.  You've introduced into evidence the building reports, you've established what the state of the certificate of occupancy is as of today, and there is no point repeating the same thing over and over again. (R. 768).

> THE COURT:  ...you should be thinking about formulating simple questions that ask the witness things like who, what, where, how and when, and not making editorial comments because the jury knows there is presently no certificate of occupancy for the entire building.  That's been established.  You don't have to establish it again. (R. 755).

Please provide me a copy of the letter you will be sending to the Court of Appeals at your earliest convenience.

Sincerely,


_____/s/_____
James H Brady

CC:     FBI New York;
        United States Senate;
        U.S. Department of Justice Public Integrity Unit;
        U.S. Department of Justice Criminal Division, OCGS;
        Office of the Attorney General Public Integrity Bureau;

United States Attorney's Office Public Corruption Unit;
Commission of Judicial Conduct;
Manhattan District Attorney's Office;
New York Court of Appeals;
SDNY Public Integrity Bureau.